# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIM RONCE SHAFFER, D.D.S.,    )
        )
    Plaintiff,    )
        )
    v.    )    **Civil Action No. 07-298**
        )    **Electronic Filing**
JAMES B. PEAKE,[1]    )
SECRETARY OF THE DEPARTMENT )
OF VETERANS AFFAIRS, and THE )
UNITED STATES OF AMERICA,    )
        )
    Defendants.    )

## OPINION

Cercone, J.

## I.    INTRODUCTION

This matter comes before the Court on the Defendants' Partial Motion to Dismiss (*Document No. 3*), the Defendants' Motion to Strike the Plaintiff's Demand for a Jury Trial (*Document No. 5*), the Plaintiff's Motion to Assess Costs (*Document No. 14*), the Defendants' Renewed Motion to Dismiss the Plaintiff's Tort Claims (*Document No. 35*), and the Defendants' Renewed Motion to Strike the Plaintiff's Demand for a Jury Trial (*Document No. 37*).

## II.    BACKGROUND

Plaintiff Kim Ronce Shaffer ("Shaffer") commenced this action against Secretary of Veterans Affairs R. James Nicholson ("Nicholson") and the United States of America on March

---

[1]R. James Nicholson was initially named as a defendant in this case. Nevertheless, he is no longer the Secretary of Veterans Affairs. On December 14, 2007, the United States Senate confirmed James B. Peake as the new Secretary of Veterans Affairs. Since this is an official capacity suit against the Secretary, Secretary Peake has been automatically substituted for former Secretary Nicholson pursuant to Federal Rule of Civil Procedure 25(d).

8, 2007. Doc. No. 1. Since that time, James B. Peake has replaced Nicholson as the Secretary of Veterans Affairs. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Secretary Peake has been automatically substituted for Nicholson as a party in this case. *Fed. R. Civ. P. 25(d).* Since this matter comes before the Court in the present procedural posture, the allegations in Shaffer's complaint are assumed to be true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). Although "heightened fact pleading of specifics" is not required, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

Shaffer is an adult male who resides in Butler, Pennsylvania, and is employed by the Veterans Affairs Medical Center ("VAMC") in Butler. Doc. No. 1, ¶ 1. When this action was commenced, he was seventy-four years of age. *Id.*, ¶ 4. Shaffer is a licensed dentist in good standing in the Commonwealth of Pennsylvania, and he has been employed by the Butler VAMC since 1971. *Id.* He was appointed as a dentist pursuant to 38 U.S.C. § 7401(1), and he completed his probationary period in 1973. *Id.*, ¶ 5. Since his appointment, Shaffer has been consistently rated as "qualified" to perform his duties in his annual performance evaluations. *Id.*, ¶ 6. He has also received awards for his performance. *Id.*

Since 2000, Linda Thompson ("Thompson") and Tracy Boyle ("Boyle") have been employed as dental assistants to both Shaffer and a younger, female dentist. *Id.*, ¶ 7. Their duties have included preparing operating rooms and patients, passing instruments to the dentists, and ensuring that all rooms, instruments and equipment remain clean. *Id.* David Wood ("Wood") is also employed by the Department of Veterans Affairs. *Id.*, ¶ 8. At one point, he was the Director of the Butler VAMC. *Id.* As such, he was responsible for supervising agency

personnel on behalf of Charleen R. Szabo ("Szabo"), who was the Director of the Veterans Integrated Services Network ("VISN"). *Id.* Varsha Mehta ("Mehta") is the Butler VAMC's Chief of Staff. *Id.*, ¶ 9. At all relevant times, she was responsible for supervising agency personnel on behalf of the Director of the Butler VAMC. *Id.* Although she is not a dentist and holds no qualifications in the field of dentistry, Mehta is Shaffer's immediate supervisor. *Id.*, ¶ 10. The Butler VAMC has not had a Chief of Dental Service to supervise dental employees since 1998. *Id.*, ¶ 11. For this reason, Thompson and Boyle have been supervised by a respiratory therapist who has no dental background. *Id.*, ¶ 12. In 2004, this respiratory therapist completed all performance evaluations for members of the dental staff, including those for Shaffer, Thompson and Boyle. *Id.*, ¶ 13.

Shaffer alleges that, during the spring of 2005, Thompson and Boyle decided that they no longer wanted to work for him. *Id.*, ¶ 14. They allegedly conspired to engage in a pattern of conduct designed to make Shaffer's work environment hostile and, ultimately, to force the termination of his employment. *Id.* On March 10, 2005, Thompson and Boyle made false allegations about Shaffer to Wood and Mehta. *Id.*, ¶ 15. These allegations were made both orally and in writing. *Id.* Thompson and Boyle claimed that Shaffer could not perform his duties as a dentist because of mental confusion, shaky hands, and poor eyesight. *Id.*, ¶ 16. They also contended that he was slow and ineffectual, that he lacked competence, that he did not show enough empathy to his patients, and that he had injured patients without completing required reports about such injuries. *Id.* The most serious allegations lodged against Shaffer by Thompson and Boyle included statements that he had used dental instruments on patients until they were visibly bloody, and that he had been spreading loathsome diseases to his patients. *Id.*

Shortly thereafter, Wood and Mehta agreed that Shaffer should be put on an indefinite administrative leave, and barred from the Butler VAMC, until after a non-evidentiary hearing before three agency employees. *Id.*, ¶ 17. They did not consult anyone with expertise in the field of dentistry before taking this action. *Id.* Despite the allegedly "intolerable" conditions placed on Shaffer, he did not resign. *Id.*, ¶ 18. Shaffer received a hand-delivered summons at his home on March 14, 2005, directing him to appear for a hearing the following day. *Id.*, ¶ 19. He was not informed of the charges against him, nor was he provided with written notification of the summary suspension of his privileges. *Id.* These omissions apparently constituted violations of agency policies. *Id.*

A non-evidentiary hearing was held on March 15, 2005, before a panel of three employees, none of whom were dentists. *Id.*, ¶¶ 17, 20. Thompson and Boyle both testified at the hearing, making false accusations against Shaffer. *Id.*, ¶ 20. Because the members of the panel were not dental experts, they took no action after the hearing. *Id.*, ¶ 21. Wood responded in May 2005 by convening a panel of experts in the field of dental infection control to investigate the allegations against Shaffer. *Id.*, ¶ 22. This panel included an agency infection control physician and three dentists. *Id.* Two of the dentists were employed by the Department of Veterans Affairs, while the third was employed by the United States Air Force. *Id.* The expert panel found the allegations against Shaffer to be without merit, determining that they had been motivated by a discriminatory animus and recommending that Shaffer's patients not be notified of the investigation. *Id.*, ¶ 23.

Shaffer returned to work on May 23, 2005. *Id.*, ¶ 24. The Department took no action to remedy the "discrimination" against him. *Id.* Thompson and Boyle refused to provide Shaffer

with assistance. *Id.* Shaffer informed Mehta about the situation and requested further assistance, but his request was ignored. *Id.* Notwithstanding the expert panel's recommendation to the contrary, Wood sent letters to 2,086 former patients on June 9, 2005, advising them to call a help-line created for those believed to have contracted loathsome diseases from Shaffer during the previous six years. *Id.*, ¶ 25. A staff meeting was held on June 20, 2005. *Id.*, ¶ 26. At that meeting, Mehta ridiculed and demeaned Shaffer in front of the entire dental staff, referring to him as slow, ineffectual and incompetent. *Id.* She allegedly said this while knowing that Shaffer was both competent and productive, and that his patients were pleased with his services. *Id.* Throughout the spring and summer of 2005, Wood repeated several false allegations made by Mehta, Thompson and Boyle about Shaffer to numerous individuals. *Id.*, ¶ 27. One such communication was made in the form of an electronic mail message to all employees of the Butler VAMC. *Id.* Wood also made statements about Shaffer to several dentists and public officials, as well as to the Pennsylvania Department of Health and the Joint Commission on Accreditation of Health Organizations ("JCAHO"). *Id.*

In August 2005, Mehta withheld Shaffer's application for the renewal of his professional privilege to work as a dentist at the Butler VAMC. *Id.*, ¶ 28. This action allegedly constituted a violation of agency policy. *Id.* On September 21, 2005, Mehta made statements to the television, radio and newspaper media indicating that a member of the Butler VAMC's dental staff may have caused patients to contract loathsome diseases by using unsterilized equipment. *Id.*, ¶ 29. The next day, Thompson and Boyle submitted to Wood and Mehta a list of false allegations against Shaffer involving sixty new patients. *Id.*, ¶ 30. These allegations were based on notes which had been secretly compiled by Thompson and Boyle over a period of four

months. *Id.* Wood and Mehta responded on September 23, 2005, by placing Shaffer on a directed reassignment to nonprofessional duties. *Id.*, ¶ 31. They did not discuss the new allegations with a dental expert, nor did they provide Shaffer with a written notification of the suspension of his privileges. *Id.*

On September 27, 2005, Wood directed Anne M. Mikolajczak ("Mikolajczak"), an employee of the Butler VAMC, to repeat the new allegations made by Thompson and Boyle to the sixty patients appearing on the list which had been submitted five days earlier. *Id.*, ¶ 32. In accordance with Wood's instructions, Mikolajczak recorded the responses of these patients in the form of written incident reports. *Id.* She also notified dentists in the community that Shaffer could not see his patients. *Id.* One day later, on September 28, 2005, Mikolajczak telephoned Shaffer to inform him that he was being terminated, and that he should submit his professional license to Wood. *Id.*, ¶ 33. She made this telephone call pursuant to Wood's instructions. *Id.* After the passage of a few days, Wood informed the JCAHO that Shaffer was being terminated because of his alleged incompetence in the field of dentistry. *Id.*, ¶ 34.

During the fall of 2005, Wood and Mehta forwarded false information about Shaffer (based on the September 22, 2005, list prepared by Thompson and Boyle) to a dentist employed by the Department in Philadelphia, Pennsylvania, for "peer/clinical reviews." *Id.*, ¶ 35. Shaffer was not given an opportunity to respond. *Id.* On October 31, 2005, Shaffer requested counseling with the Department's Office of Resolution Management ("ORM") for Equal Employment Opportunity ("EEO") claims, naming Mehta as the responding authority for the Department. *Id.*, ¶ 36. Mehta served Shaffer with a Notice of Proposed Discharge on November 23, 2005, based on three charges related to the prior allegations made by Thompson and Boyle. *Id.*, ¶ 37. These

charges were related to accusations that Shaffer abused his patients, exposed them to loathsome diseases by failing to adhere to appropriate infection control practices, and failed to obtain their informed consent before performing operations. *Id.* The Notice of Proposed Discharge also referenced the peer/clinical reviews. *Id.*

Shaffer, through his legal counsel, wrote a letter to Szabo on December 8, 2005, stating that at least five employees of the Butler VAMC were acting in concert to have him fired and publicly humiliated. *Id.*, ¶ 38. He asked her to take control of the situation. *Id.* A few days later, Shaffer served a request for documents on the Butler VAMC pursuant to the Freedom of Information Act ("FOIA") [5 U.S.C. § 552]. Wood advised Shaffer that he would have to pay $24,423.50 to initiate the document production process, and that the documents would not be available until December 13, 2014. *Id.*, ¶ 40. This effectively deprived Shaffer of a legitimate opportunity to defend himself. *Id.*

Shortly before December 15, 2005, Shaffer took his dental appointment book to the area in which he was assigned to work. *Id.*, ¶ 41. He did this in order to prepare for a session which had been called for the purpose of mediating his EEO claims. *Id.* On December 20, 2005, Mehta demanded that Shaffer turn over his dental appointment book. *Id.*, ¶ 42. She denied his request for time to speak with his counsel, referring to his resistance as "insubordinate." *Id.* She indicated that Shaffer's continued possession of the appointment book constituted an improper possession and use of government property. *Id.* That same day, Mehta withdrew the original Notice of Proposed Discharge and reported Shaffer to the Regional Counsel and Office of Inspector General ("OIG") for possessing his appointment book to prepare for the EEO mediation session. *Id.*, ¶ 43. She sought the imposition of both a ten-year prison sentence and a

$250,000.00 fine against Shaffer. *Id.* The agency staff attorney who was representing the Department in the EEO matter sent Shaffer's counsel a letter referring to Mehta's charge concerning the appointment book. *Id.*, ¶ 44. The letter stated, in pertinent part, as follows:

> In case you are unaware, violations of [HIPPA] calls for severe civil and criminal penalties for non-compliance, including . . . fines up to $250,000 and for imprisonment for up to 10 years . . . The decision to seek prosecution [of] a VA employee for violating HIPPA would be made by the Inspector General in collaboration with the US Attorney.
> It is my understanding that the Inspector General's office has not yet made a decision whether to refer the matter to the U.S. Attorney for prosecution.

*Id.* (brackets in original averment). A copy of this letter was given to Shaffer. *Id.*

Shaffer filed an administrative complaint with the ORM on January 25, 2006, alleging that he was being subjected to unlawful discrimination based on age and gender. *Id.*, ¶ 45. On February 13, 2006, Shaffer received a letter from the ORM stating that his EEO claim had been accepted for investigation. *Id.*, ¶ 46. The next day, Mehta issued to Shaffer a second Notice of Proposed Discharge, which included three additional charges. *Id.*, ¶ 47. The additional charges alleged Shaffer's unauthorized possession of government property, his unauthorized use of government property, and his insubordination. *Id.* Wood discharged Shaffer on March 2, 2006, based on the six charges in both Notices of Proposed Discharge prepared by Mehta and on the peer/clinical reviews. *Id.*, ¶ 48.

On March 3, 2006, Wood and Mehta recorded that Shaffer was absent without leave ("AWOL"), ignoring a letter from Shaffer's counsel seeking information about their expectations for him. *Id.*, ¶ 49. Shaffer appealed his discharge pursuant to 38 U.S.C. §§ 7461-7464. *Id.*, ¶ 50. A Disciplinary Appeals Board ("DAB") comprised of three Department employees (two of

whom were dentists and the third of whom was a physician) heard Shaffer's appeal at an evidentiary hearing which lasted from May 22-23, 2006. *Id.* On August 18, 2006, the Department made a final agency determination adopting the recommendations of the DAB. *Id.*, ¶ 51. The DAB found that the new allegations made against Shaffer by Thompson and Boyle were not credible, and that they had probably been made on the basis of ulterior motives. *Id.* The determination vacated Shaffer's discharge, ordered that he be immediately reinstated with back pay, indicated that he should be disciplined with a "written counseling" in his personnel file for possessing the appointment book, and directed that an investigation be conducted into his competence based on the peer/clinical reviews. *Id.* The peer/clinical reviews had apparently not been used as a part of the Department's case-in-chief before the DAB. *Id.*

Although Shaffer received the determination ordering his immediate reinstatement on September 22, 2006, he did not receive instructions to return to duty. *Id.*, ¶ 52. On November 2, 2006, he received a letter from the Department directing him to report for clerical reassignment while a Professional Standards Board ("PSB") was convened to investigate the allegations made by Thompson and Boyle, which had been included in the *ex parte* peer/clinical reviews. *Id.*, ¶ 53. Since that time, Shaffer has been allowed to perform only clerical duties which bear no relationship to his training as a dentist. *Id.*

At approximately 4:00 P.M. on January 9, 2007, the Department served Shaffer with a summons to testify at a PSB hearing on January 12, 2007. *Id.*, ¶ 54. The next day, Shaffer's counsel, who could not attend the hearing, filed a request for a continuance. *Id.*, ¶ 55. Shaffer's counsel also filed various objections with the Department, alleging various violations of federal constitutional and statutory law. *Id.* The PSB nevertheless held a non-evidentiary hearing at the

Butler VAMC on January 12, 2007, before two dentists and a psychiatrist employed by the Department. *Id.*, ¶ 56. Thompson and Boyle were allowed to testify in secret. *Id.* Thus, Shaffer was not able to hear their testimony, nor was he able to confront them. *Id.*

Shaffer alleges that he has not been permitted to return to his duty as a dentist, and that he has been deprived of a statutory entitlement to practice his profession since September 23, 2005. *Id.*, ¶ 59. He avers that the conduct of Wood, Mehta, Thompson and Boyle was motivated by an animus based on age and gender. *Id.*, ¶ 60. As a result of this conduct, Shaffer has allegedly suffered damage to his professional reputation, a loss of earning power, extreme humiliation and emotional distress. *Id.*, ¶ 61. The relevant employees of the Department are alleged to have been acting within the scope of their employment. *Id.*, ¶ 62.

Shaffer commenced this action against Nicholson and the United States on March 8, 2007. Doc. No. 1. His Complaint includes twelve counts. The first three counts are based on alleged violations of the Age Discrimination in Employment Act ("ADEA") [29 U.S.C. § 621 *et seq.*]. In Count I, Shaffer alleges a violation of the ADEA pursuant to a hostile work environment theory. *Id.*, ¶¶ 63-73. Count II asserts a claim under the ADEA for disparate treatment, while Count III is based on a theory of retaliation for Shaffer's exercise of his rights under the ADEA. *Id.*, ¶¶ 74-79. In Count IV, Shaffer alleges that the Defendants' intentional discrimination against him because of his age violated his rights under 42 U.S.C. § 1981a. *Id.*, ¶¶ 80-85. Counts V through VIII are based on allegations of gender discrimination. *Id.*, ¶¶ 86-104. Counts V, VI and VII allege that the Defendants violated Shaffer's rights under Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. § 2000e *et seq.*] pursuant to hostile work environment, disparate treatment and retaliation theories. *Id.*, ¶¶ 86-99. Count VIII, which also

alleges gender discrimination, is based on § 1981a. *Id.*, ¶¶ 100-104. Counts IX, X and XI seek redress for the torts of negligent infliction of emotional distress, negligent supervision and negligent damage to property pursuant to the Federal Tort Claims Act ("FTCA") [28 U.S.C. § 2671 *et seq.*]. In Count XII, Shaffer seeks injunctive, declaratory and other equitable relief for alleged violations of the Due Process Clause of the Fifth Amendment. *Id.*, ¶¶ 133-147.

On May 10, 2007, the Defendants filed a Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), seeking the total dismissal of Counts III, IV, VIII, IX, X, XI and XII and the partial dismissal of Counts II, VI and VII. Doc. Nos. 3 & 8. The Defendants argued that Counts IX, X and XI, which were based on the FTCA, needed to be dismissed for lack of subject matter jurisdiction on the ground that Shaffer had failed to exhaust his administrative remedies in accordance with 28 U.S.C. § 2675(a). Doc. No. 3, pp. 15-17. Apparently recognizing that the Defendants' argument had merit, Shaffer filed an administrative tort claim with the Department's Office of Regional Counsel on May 11, 2007, seeking damages in the amount of $12,000,000.00. Doc. No. 24-2, p. 26. This administrative claim was denied on September 6, 2007. *Id.*, pp. 26-27. On September 13, 2007, Shaffer commenced a separate action against the Defendants, seeking redress under the FTCA for the torts of negligent infliction of emotional distress, negligent supervision and negligent damage to property. CV-07-1234, Doc. No. 1, ¶¶ 7-34. That same day, he sought leave to withdraw Counts XI, X and XI in this action, contending that they had been replaced by Counts I, II and III in his other action. Doc. No. 24. The Court subsequently granted Shaffer leave to withdraw Counts IX, X and XI. Doc. No. 25. On September 19, 2007, Shaffer filed a Motion to Consolidate these two actions. Doc. No. 26. The Court granted Shaffer's Motion to Consolidate on September 27, 2007, and his

second action against the Defendants was closed. Doc. No. 28. The averments contained in Counts I, II and III in Shaffer's second action are identical in all relevant respects to those contained in Counts XI, X and XI in this action. To avoid confusing them with Shaffer's ADEA claims, the Court will continue to refer to Shaffer's FTCA claims as Counts XI, X and XI, with the understanding that these claims have now been administratively exhausted. The exhaustion of these claims essentially moots the Defendants' arguments originally raised in support of the dismissal of Counts XI, X and XI. Nevertheless, on December 6, 2007, the Defendants filed a Motion to Dismiss Shaffer's FTCA claims on other grounds. Doc. No. 35. Consequently, the Court must now rule on the Defendants' original Partial Motion to Dismiss as to Counts II, III, IV, VI, VII, VIII and XII, and on their second Motion to Dismiss as to Counts IX, X and XI.

On the same day that they filed their original Partial Motion to Dismiss, the Defendants filed a Motion to Strike Shaffer's demand for a jury trial as to Counts I, II, III, IV, IX, X and XI, contending that plaintiffs suing the United States under the ADEA and the FTCA have no right to a jury trial. Doc. No. 5. This Motion to Strike was filed pursuant to Federal Rule of Civil Procedure 39(a). After the consolidation of Shaffer's two actions, which resulted in the substitution of his exhausted FTCA claims for the previously unexhausted Counts XI, X and XI of the original Complaint, the Defendants filed a second Motion to Strike Shaffer's jury trial demand as to his claims under the FTCA. Doc. No. 37. The Defendants apparently took this action for the purpose of ensuring that their previous Motion to Strike had not been mooted as to Shaffer's FTCA claims by his subsequent exhaustion (and refiling) of those claims. These Motions to Strike are currently pending before the Court.

Shaffer filed his response in opposition to the Defendants' Partial Motion to Dismiss on

June 8, 2007.  Doc. No. 14.  Included therein was a Motion to Assess Costs against the

Defendants.  *Id.*, p. 5.  Shaffer claims that costs should be assessed against the Defendants for

causing him "an undue burden and additional harassment in attempting to bring his claims to this

Court."  *Id.*  This Motion to Assess Costs is presently pending before the Court.  The Defendants'

Motions to Dismiss and Motions to Strike, as well as Shaffer's Motion to Assess Costs, have

been extensively briefed, are ripe for resolution, and are the subject of this memorandum opinion.

## III.  DISCUSSION

### A.  The Administrative Exhaustion of Counts II, VI and VII

The Defendants move for the partial dismissal of Counts II, VI and VII on the ground that

Shaffer did not exhaust his administrative remedies as to these claims with respect to the conduct

alleged to have occurred prior to September 19, 2005.  Doc. No. 4, pp. 4-8, 13-14.  These counts

include Shaffer's disparate treatment claims under both the ADEA and Title VII, as well as his

retaliation claims under Title VII.  The Defendants' basis for moving to partially dismiss these

counts is 29 C.F.R. § 1614.105(a)(1), which provides:

> **§ 1614.105 Pre-complaint processing.**
> (a) Aggrieved persons who believe they have been discriminated against
> on the basis of race, color, religion, sex, national origin, age or handicap must
> consult a Counselor prior to filing a complaint in order to try to informally resolve
> the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45
> days of the date of the matter alleged to be discriminatory or, in the case of
> personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).  The record indicates that Shaffer initially contacted an EEO

counselor on November 3, 2005.  Doc. No. 4-3, p. 2.  The Defendants contend that Counts II, VI

and VII must be dismissed as to conduct occurring prior to September 19, 2005, since Shaffer did

not contact an EEO counselor about such conduct within the 45-day timeframe established by the applicable regulation.  Doc. No. 4, pp. 4-8, 13-14.

Shaffer does not appear to take issue with the Defendants' reliance on § 1614.105(a)(1)'s 45-day limitations period.  Instead, he states that the factual averments which the Defendants seek to have dismissed (as to Counts II, VI and VII) are included in the Complaint as background evidentiary averments.  Doc. No. 10, pp. 1-3.  The Court also notes that Counts I and V assert hostile work environment claims under the ADEA and Title VII.  Doc. No. 1, ¶¶ 63-73, 86-93. In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), the United States Supreme Court recognized that hostile work environment claims under Title VII can be based on all acts contributing to (or culminating in) the creation of the actionable hostile work *environment*, even if some of those acts occur outside of the applicable charging period. Speaking through Justice Thomas, the Supreme Court explained:

> As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring.  Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

*Morgan*, 536 U.S. at 117.  This language in *Morgan* is presumably why the Defendants do not seek the partial dismissal of Counts I and V.

Like Counts I and V, Counts II, VI and VII simply incorporate by reference all of the previous factual averments appearing in the Complaint.  Doc. No. 1, ¶¶ 74, 94, 97.  The conduct alleged to have occurred both before and after September 19, 2005, is directly relevant to Counts I and V, while the conduct alleged to have occurred after that date is also directly relevant to

Counts II, VI and VII.  This issue need not detain the Court for long, since the parties do not appear to dispute that Shaffer's disparate treatment claims under the ADEA and Title VII, as well as his retaliation claims under Title VII, are only actionable with respect to conduct alleged to have occurred subsequent to September 19, 2005.  For the sake of clarity, the Court will grant the Defendants' Partial Motion to Dismiss Counts II, VI and VII to the extent that such counts are construed to be based on conduct before September 19, 2005.  Shaffer can proceed with these claims on the basis of conduct alleged to have occurred after that date.

### B.  The Retaliation Claims Under the ADEA

In Count III of the Complaint, Shaffer alleges that the Defendants retaliated against him for seeking to effectuate his rights under the ADEA.  Doc. No. 1, ¶¶ 77-79.  Although he specifically singles out the actions of Wood and Mehta concerning their complaints about his alleged misuse of the dental appointment book, he does not appear to limit his retaliation claims to such actions.  *Id.*, ¶ 79.  The Defendants seek the dismissal of Count III on the ground that retaliation claims brought by federal employees against the federal government are not actionable under the ADEA.  The question of whether the ADEA makes retaliation actionable against the federal government has divided courts across the country.  Some courts have construed the ADEA to provide federal employees with a cause of action for retaliation.  *Forman v. Small*, 271 F.3d 285, 298-299 (D.C.Cir. 2001); *Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989).  Other courts have held to the contrary.  *Gomez-Perez v. Potter*, 476 F.3d 54, 55-60 (1st Cir. 2007), cert. granted, 128 S.Ct. 29 (2007); *Kuzdrowski v. Nicholson*, 2006 WL 3053460, at *7-9 (W.D.Pa. October 25, 2006); *Patrick v. Chertoff*, 2005 WL 1827876, at *2, 2005 U.S. Dist. LEXIS 15193, at *11-12 (N.D.Tex. July 27, 2005); *Whitman v. Mineta*, 382 F.Supp.2d 1130, 1134-1136

15

(D.Alaska 2005); *Cyr v. Perry*, 301 F.Supp.2d 527, 531-535 (E.D.Va. 2004).  The Court must

examine the applicable statutory language in order to dispose of the Defendants' Partial Motion

to Dismiss as to Count III.  In conducting this analysis, the Court is mindful of the Supreme

Court's admonition in *Lane v. Pena*, 518 U.S. 187, 192 (1996), that "a waiver of the

Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the

sovereign."

In its original form, the ADEA did not limit the actions of the United States in its capacity

as an employer.  Congress amended the ADEA in 1974 to provide covered federal employees

with protection against age discrimination.  Pub. L. No. 93-259, § 15, 88 Stat. 55, 74-75 (1974).

The applicable provision, which is currently codified at 29 U.S.C. § 633a(a), provides that "[a]ll

personnel actions affecting employees or applicants for employment who are at least 40 years of

age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  The

issue in this case is whether the retaliatory actions alleged in the Complaint constitute

"discrimination based on age."

The ADEA specifically provides that personnel actions by the United States "shall not be

subject to, or affected by, any provision of" the ADEA other than § 633a or 29 U.S.C. § 631(b).[2]

29 U.S.C. § 633a(f).  Consequently, it is clear that the ADEA's provisions covering private

employers do not control the outcome in a case such as this, in which a federal employee

complains of age "discrimination" allegedly perpetrated by the United States.  Nevertheless, the

Court looks to the ADEA's private sector provisions for the purpose of determining whether

---

[2]29 U.S.C. § 631(b) simply provides that the prohibitions contained within § 633a "shall be limited to individuals who are at least 40 years of age."  The parties do not dispute that Shaffer is within the class of persons protected under the ADEA.

retaliation constitutes "discrimination based on age" within the meaning of § 633a.  The

applicable provisions of the ADEA provide:

> **§ 623.  Prohibition of age discrimination**
> **(a) Employer practices.**  It shall be unlawful for an employer--
> (1) to fail or refuse to hire or to discharge any individual or otherwise *discriminate against* any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age*;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of such individual's age*; or
> (3) to reduce the wage rate of any employee in order to comply with this Act.
>
> \*\*\*
>
> **(d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation.**  It shall be unlawful for an employer to *discriminate against* any of his employees or applicants for employment, for an employment agency to *discriminate against* any individual, or for a labor organization to *discriminate against* any member thereof or applicant for membership, *because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.*

29 U.S.C. § 623(a), (d)(emphasis added).  In *Burlington Northern & Sante Fe Railway Co. v.

White*, 126 S.Ct. 2405, 2411 (2006), the Supreme Court construed the words "discriminate

against," as they appeared in Title VII's anti-retaliation provision, to prohibit a broad category of

*discriminatory* conduct.[3]  "Title VII's anti-retaliation provision does not merely prohibit an

---

[3] The Court notes that the ADEA's anti-retaliation provision is not materially different from that contained in Title VII.  Title VII's anti-retaliation provision provides: "It shall be an unlawful employment practice for any employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]."  42 U.S.C. § 2000e-3(a).

employer from discriminating against an individual 'with respect to his compensation, terms, conditions, or privileges of employment,' but instead sweeps broadly enough to prohibit other 'materially adverse' actions taken in retaliation for activity protected under the statute." *Johnson v. The McGraw-Hill Companies*, 451 F.Supp.2d 681, 710 (W.D.Pa. 2006). What matters is "whether a particular action would deter an objectively reasonable employee from seeking legal recourse." *Id.* While this category of actionable retaliatory conduct does not encompass "petty slights, minor annoyances, and simple lack of good manners," it is not limited to those actions "that are related to employment or occur at the workplace." *Burlington Northern*, 126 S.Ct. at 2409, 2415. Moreover, the Supreme Court made the following observations about the different purposes served by Title VII's substantive and anti-retaliation provisions:

> There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well. The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

*Burlington Northern*, 126 S.Ct. at 2412. Given the similarities between the anti-retaliation provision contained in Title VII and that contained in the ADEA, the Court is convinced that they should be construed in a similar manner. *Johnson*, 451 F.Supp.2d at 710. Thus, the Court proceeds on the assumption that the principles discussed in *Burlington Northern* apply with equal force to the private sector provisions of the ADEA.

At the outset, it is worth noting that, in Shaffer's Complaint, he relies specifically on § 623(d), which is the ADEA's anti-retaliation provision applicable to private sector employees. Doc. No. 1, ¶¶ 78-79. As noted earlier, that provision is clearly inapplicable to the United States, given the mandate from Congress that any personnel action taken by the United States "shall not be subject to, or affected by, any provision" of the ADEA other than § 633a or § 631(b). 29 U.S.C. § 633a(f). Hence, Shaffer can assert a retaliation claim under the ADEA in this case only by establishing that the retaliatory acts alleged in the Complaint are proscribed by § 633a(a).

The Court is convinced that Shaffer cannot pursue his retaliation claims under the ADEA for two distinct reasons grounded in the statutory language. By its very terms, § 633a(a) provides only that "*personnel actions* affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination *based on age*." 29 U.S.C. § 633a(a)(emphasis added). Since the ADEA's anti-retaliation provision proscribes all "materially adverse" retaliatory actions (i.e., actions which may deter an objectively reasonable person from engaging in activity protected under the ADEA), including those which do not impact an individual's "compensation, terms, conditions, or privileges of employment," it is clear that no relevant analogue to that provision can be found in § 633a(a). Section 633a(a) proscribes only discriminatory *personnel actions*. *Id.* This factor weighs heavily in favor of the position advanced by the Defendants. Another factor weighing in favor of the Defendants' position is the distinction made by the Supreme Court in *Burlington Northern* between substantive prohibitions of discrimination, which seek to prevent harm to individuals "based on who they are," and anti-retaliation provisions, which seek to prevent harm to individuals "based on what they do." *Burlington Northern*, 126 S.Ct. at 2412. Since retaliation constitutes *discrimination* against an

individual because of what he or she *does* (rather than because of his or her *status* as a person who has attained the age of 40), acts of retaliation cannot be fairly characterized as "discrimination *based on age*" for purposes of § 633a(a).[4] For these reasons, the Court will grant the Defendants' Partial Motion to Dismiss as to Count III of Shaffer's Complaint.

This Court's conclusion is consistent with the decision of the United States Court of Appeals for the First Circuit in *Gomez-Perez v. Potter*, 476 F.3d 54 (1st Cir. 2007), cert. granted, 128 S.Ct. 29 (2007). The Court finds the analysis in that decision to be persuasive. Nevertheless, the Court notes that the Supreme Court has granted certiorari in that case. Arguments were heard on February 19, 2008, the case was submitted, and a decision is expected before the end of June. *Gomez-Perez v. Potter*, 06-1321. Since the question of whether retaliation is actionable under § 633a(a) will soon be resolved by the Supreme Court, Count III of Shaffer's Complaint will be dismissed without prejudice. Should this Court's conclusion turn out to be incorrect, Shaffer can seek leave to reinstate his retaliation claims under the ADEA.

### C. The Construction of 42 U.S.C. § 1981a

Counts IV and VIII of Shaffer's Complaint purport to assert claims against the

---

[4]It is not clear whether an individual who has not attained the age of 40 can pursue an action under the ADEA against a private sector employer for retaliation. Although the ADEA provides that its *prohibitions* "shall be limited to individuals who are at least 40 years of age" without distinguishing between its substantive and anti-retaliation prohibitions, there is some authority supporting the proposition that the ADEA protects younger individuals from retaliation when they assist in investigations involving individuals who fall within the ADEA's protected class of persons. *Anderson v. Phillips Petroleum Co.*, 722 F.Supp. 668, 671-672 (D.Kan. 1989)("Since an age related animus is not a required element, it would be ridiculous to require plaintiff to show that he is in the protected age class to state a claim of retaliation."). A determination that individuals under the age of 40 have such protection from retaliation under the ADEA's private sector anti-retaliation provision would provide an additional reason for concluding that retaliation is not actionable under § 633a(a). Section 633a(a) applies only to "personnel actions affecting employees or applicants for employment who are at least 40 years of age[.]" 29 U.S.C. § 633a(a). The Court need not rely on this third potential statutory basis for dismissing Count III, however, since the two bases expressly relied upon in this opinion are adequate to sustain a conclusion that retaliation is not actionable under § 633a(a).

Defendants under 42 U.S.C. § 1981a.  The Defendants seek the dismissal of these counts on the ground that § 1981a does not create a cause of action.  Doc. No. 4, pp. 12-13, 15.  The Defendants also ask the Court to strike Shaffer's demand for a jury trial as to Counts I and II on the ground that plaintiffs suing the federal government under the ADEA have no right to a jury trial.  Doc. No. 6, pp. 2-4.  Since these issues all concern the proper construction of § 1981a, the Court will address them together.

The Civil Rights Act of 1991 was signed into law by President George H.W. Bush on November 21, 1991.  Pub. L. No. 102-166, 105 Stat. 1071 (1991).  This legislation added the following language to the United States Code:

**§ 1981a.  Damages in cases of intentional discrimination in employment**
**(a) Right of recovery.**  (1) Civil rights.  In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e5 [or 2000e-16]) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3 [or 2000e-16]), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 USCS § 2000e-5(g)], from the respondent.

***

**(b) Compensatory and punitive damages.**  (1) Determination of punitive damages.  A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.
(2) Exclusions from compensatory damages.  Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 USCS § 2000e-5(g)].
(3) Limitations.  The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--

\*\*\*

> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

\*\*\*

**(c) Jury trial.** If a complaining party seeks compensatory or punitive damages under this section--
(1) any party may demand a trial by jury; and
(2) the court shall not inform the jury of the limitations described in subsection (b)(3).

42 U.S.C. § 1981a(a)-(c).[5]  The Court notes that Shaffer seeks compensatory damages in the amount of $300,000.00, as well as a jury trial, for violations of *both* Title VII and the ADEA. Doc. No. 1, ¶¶ 85, 104.

The Defendants seek the dismissal of Counts IV and VIII on the ground that § 1981a does not create a distinct cause of action, but merely expands the remedies available to individuals who sue under Title VII.  Doc. No. 4, pp. 12-13, 15.  For the reasons that follow, the Court is convinced that the Defendants are entitled to the dismissal of these counts.  Nevertheless, the practical consequences of such dismissal differs meaningfully between Count IV and Count VIII.

The plain language of § 1981a indicates that it expands the *remedies* available to Title VII plaintiffs rather than the substantive rights of those entitled to Title VII's protections.  Indeed, the particular remedies provided by § 1981a are available only to those plaintiffs who establish the

---

[5]The omitted provisions of this statute concern claims brought under the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 *et seq.*], and the Rehabilitation Act of 1973 [29 U.S.C. § 701 *et seq.*], as well as the caps on compensatory and punitive damages applicable to employers which have fewer than 500 employees.  These provisions are not implicated in this case.  Most relevant to the Court's analysis is the fact that none of these provisions make reference to the ADEA.

22

existence of *intentional* discrimination under Title VII, and not those who establish the existence

of an unlawful employment practice on the basis of a disparate impact. 42 U.S.C. § 1981a(a)(1).

Shaffer's Complaint alleges intentional discrimination, so § 1981a is applicable in this case.

Nevertheless, § 1981a contains no language which expands the substantive rights of individuals.

It is strictly remedial in nature, since its provisions apply only where a plaintiff establishes an

underlying violation of Title VII. As the United States District Court for the District of Kansas

observed in *West v. The Boeing Company*, 851 F.Supp. 395 (D.Kan. 1994):

> Section 1981a cannot stand on its own. It is wholly dependent on Title VII and
> other substantive Acts. Section 1981a(a)(1) merely expands the remedies
> available under Title VII and is properly viewed as an extension of and
> amendment thereto. It should not be interpreted otherwise simply because it
> happens to appear in a place different than Title VII in the United States Code.

*West*, 851 F.Supp. at 401. Admittedly, there is some authority supporting the proposition that a

plaintiff can pursue a distinct cause of action under § 1981a. *Larsen v. Simonds Industries, Inc.*,

337 F.Supp.2d 331, 337-338 (D.Mass. 2004). The overwhelming majority of the courts which

have addressed this question, however, have concluded that the statute merely expands the

remedies available to plaintiffs who suffer violations of Title VII's substantive provisions.

*Varner v. Illinois State University*, 150 F.3d 706, 718 (7th Cir. 1998), vacated and remanded, 528

U.S. 1110 (2000); *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *Pollard v. Wawa Food*

*Market*, 366 F.Supp.2d 247, 250-252 (E.D.Pa. 2005); *Powers v. Pinkerton, Inc.*, 28 F.Supp.2d

463, 472 (N.D.Ohio 1997); *Krouse v. American Sterilizer Co.*, 984 F.Supp. 891, 899 (W.D.Pa.

1996); *Presutti v. Felton Brush, Inc.*, 927 F.Supp. 545, 550 (D.N.H. 1995); *Swartzbaugh v. State*

*Farm Insurance Companies*, 924 F.Supp. 932, 934 (E.D.Mo. 1995). Given the remedial nature

of the language contained in § 1981a, as well as the construction of that statute adopted by the majority of the courts which have been presented with this question, the Court concludes that § 1981a does not create a cause of action. Thus, Counts IV and VIII of the Complaint must be dismissed.

As noted earlier, the consequences of the dismissal of Count IV differ from the consequences of the dismissal of Count VIII. Since Shaffer properly alleges violations of Title VII in Counts V, VI and VII, he is entitled to pursue the *remedies* available under § 1981a as to those claims. *Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 161 (3d Cir. 1999)(recognizing § 1981a as a basis for awarding compensatory damages in a Title VII case); *West*, 851 F.Supp. at 400 (recognizing a plaintiff's "prayer for relief" as being based on *both* Title VII *and* § 1981a, even though the cause of action was based solely on Title VII). The Court does not understand the Defendants to argue otherwise. Indeed, while the Defendants argue that Shaffer is not entitled to compensatory damages under the ADEA, they make no similar argument with respect to Title VII. Doc. No. 4, pp. 12-13, 15. Moreover, the Defendants do not deny that § 1981a affords Shaffer a statutory right to a jury trial as to his Title VII claims, since he is seeking compensatory damages. 42 U.S.C. § 1981a(c). They ask the Court to strike Shaffer's demand for a jury trial only as to his claims under the ADEA and the FTCA. Doc. No. 6, pp. 1-6. Hence, while Count VIII will be dismissed insofar as it is construed to assert a distinct cause of action against the Defendants, Shaffer remains free to pursue the remedies sought in that count with respect to his Title VII claims. In other words, Count VIII will be subsumed by Counts V, VI and VII, and there is no practical consequence of its dismissal. Shaffer may continue to seek both a jury trial and compensatory damages under Counts V, VI

and VII, in accordance with § 1981a.  The Court's dismissal of Count VIII serves no purpose other than to clarify that § 1981a creates no cause of action independent of Title VII.

As the Defendants recognize, Count IV is different than Count VIII in this respect.  In Count IV, Shaffer seeks both a jury trial and compensatory damages under § 1981a for intentional discrimination *based on age*.  Doc. No. 1, ¶ 85.  In order to establish entitlements to a jury trial and compensatory damages for age discrimination, Shaffer must identify a *source* of such entitlements.  It is not sufficient for him to argue that his position is "not foreclosed by prior decisions of the court or otherwise completely devoid of merit."  Doc. No. 10, p. 8.  Shaffer argues that the provisions of the ADEA are "virtually identical" to the provisions of Title VII. *Id.*, p. 7.  Despite some similarities in the *substantive* provisions of the ADEA and Title VII, however, the plain language of § 1981a reveals that Congress intended to provide additional *remedies* for Title VII plaintiffs that are not available to ADEA plaintiffs.  A plain reading of § 1981a(a)(1) reveals that compensatory damages[6] are available to plaintiffs who establish intentional discrimination in violation of §§ 703, 704 or 717 of Title VII.  Section 717 of Title VII was added by Congress as a part of the Equal Employment Opportunity Act of 1972, which was signed into law by President Richard M. Nixon on March 24, 1972.  Pub. L. No. 92-261, § 717, 86 Stat. 103, 111 (1972).  Section 717 is codified at 42 U.S.C. § 2000e-16, which provides, in pertinent part, that "[a]ll personnel actions affecting [federal government] employees or applicants for employment . . . shall be made free from any discrimination based on race, color,

---

[6] 42 U.S.C. § 1981a(b)(1) provides that "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  Since Shaffer's claims are asserted against the federal government, he cannot recover punitive damages.

religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Since Shaffer is an employee of the Department rather than an employee of a private entity, his Title VII claims arise under § 717. Congress clearly included § 717 within the language of § 1981a(a)(1), thereby permitting plaintiffs such as Shaffer to pursue compensatory damages for intentional violations of Title VII. 42 U.S.C. § 1981a(a)(1). Moreover, plaintiffs who seek such compensatory damages (for intentional violations of Title VII) are afforded a right to a jury trial by the plain and unambiguous language of the statute. 42 U.S.C. § 1981a(c)(1). Thus, Shaffer's rights to pursue a jury trial and compensatory damages under Title VII are firmly grounded in the language of § 1981a.

The same cannot be said of Shaffer's claims under the ADEA. Although § 1981a(a)(2) permits certain plaintiffs proceeding under the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*] and the Rehabilitation Act of 1973 ("Rehabilitation Act") [29 U.S.C. § 701 *et seq.*] to seek compensatory and punitive damages for intentional discrimination, the statute contains no similar section governing ADEA cases. The Court cannot assume that Congress intended to extend the remedies contained in § 1981a to ADEA plaintiffs as well as Title VII plaintiffs merely because the *substantive* provisions of the ADEA bear some resemblance to the *substantive* provisions of Title VII. Congress apparently extended § 1981a's remedies to certain classes of ADA and Rehabilitation Act plaintiffs because the ADA and the Rehabilitation Act incorporate Title VII's remedial scheme in cases involving employment discrimination. 42 U.S.C. § 12117(a); 29 U.S.C. § 794a(a)(1). Shaffer provides no statutory basis for his argument that the remedies contained in § 1981a somehow apply to his ADEA claims. If anything, the failure of Congress to mention the ADEA within the text of § 1981a

26

(which explicitly mentions Title VII, the ADA and the Rehabilitation Act) indicates that

Congress did *not* intend for § 1981a's remedies to be available to ADEA plaintiffs.

The ADEA's private sector provisions incorporate the remedies available under the Fair

Labor Standards Act ("FLSA") [29 U.S.C. §§ 216-217]. 29 U.S.C. § 626(b). An ADEA plaintiff

may recover lost wages and, upon a showing that the defendant's violation was willful,

liquidated damages. *Wehr v. The Burroughs Corporation*, 619 F.2d 276, 278-285 (3d Cir. 1980).

An ADEA plaintiff proceeding against a private sector defendant also has a statutory entitlement

to a jury trial. 29 U.S.C. § 626(c)(2). Since Shaffer is proceeding against the federal

government, however, his ADEA claims are governed by 29 U.S.C. § 633a(c), which provides:

> Any person aggrieved may bring a civil action in any Federal district court of
> competent jurisdiction for such legal or equitable relief as will effectuate the
> purposes of this Act.

29 U.S.C. § 633a(c). In *Lehman v. Nakshian*, 453 U.S. 156, 168-169 (1981), the Supreme Court

held that the word "legal," as used within the language of § 633a(c), does *not* incorporate a right

to a trial by jury, concluding that "Congress did not depart from its normal practice of not

providing a right to trial by jury when it waived the sovereign immunity of the United States."

Thus, Shaffer has no statutory right to a jury trial with respect to his ADEA claims.

The Seventh Amendment to the United States Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty
> dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall
> be otherwise re-examined in any Court of the United States, than according to the
> rules of the common law.

U.S. CONST. amend. VII. The Seventh Amendment, however, is of no help to Shaffer in this

case.  He has no *common law* right to sue the federal government.  *Glasspool v. United States*,

190 F.Supp. 804, 807 (D.Del. 1961).  As early as 1880, in *McElrath v. United States*, 102 U.S.

426 (1880), the Supreme Court explained:

> Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defence, or to any set-off, or counter-claim which the government may assert, are not controlled by the Seventh Amendment.  They are not suits at common law within its true meaning.  The government cannot be sued, except with its own consent.  It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits.  It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States.  Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counter-claim, or other demand of the government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of the opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege. Nothing more need be said on this subject.

*McElrath*, 102 U.S. at 440.  Since its decision in *McElrath*, the Supreme Court has made it clear

that the Seventh Amendment has no application in actions against the federal government, even

where such actions are brought in United States district courts.  *Lehman*, 453 U.S. at 164-165.

Indeed, the Supreme Court expressly stated, in *Lehman*, that the Seventh Amendment does not

afford a federal employee a right to a jury trial in an ADEA action against the federal

government.  *Id.* at 163 ("But the Seventh Amendment has no application in actions at law

against the Government, as Congress and this Court have always recognized.  Thus no particular

significance can be attributed to the word 'legal' in § 15(c)."

Federal Rule of Civil Procedure 38(a) provides that "[t]he right of trial by jury as declared

by the Seventh Amendment to the Constitution or as given by a statute of the United States shall

be preserved to the parties inviolate." *Fed. R. Civ. P. 38(a)*. Nevertheless, Shaffer has no right

to a jury trial as to his ADEA claims under the Seventh Amendment or the applicable federal

statutes. Since § 1981a did not amend § 633a(c), the Supreme Court's holding in *Lehman* is

controlling in this case. In accordance with Federal Rule of Civil Procedure 39(a), the Court

must strike Shaffer's demand for a jury trial as to his claims under the ADEA. Consequently,

this Court's dismissal of Count IV precludes Shaffer from relying on § 1981a's remedies (i.e.,

compensatory damages and a trial by jury) with respect to his ADEA claims.

In summary, § 1981a creates no independent cause of action. Therefore, Counts IV and

VIII of Shaffer's Complaint must be dismissed. Because § 1981a permits Title VII plaintiffs

alleging intentional discrimination to seek compensatory damages (and because a plaintiff who

seeks such compensatory damages has an additional statutory right to a trial by jury), Shaffer may

pursue the *remedies* available under § 1981a under Counts V, VI and VII despite this Court's

dismissal of Count VIII. In this respect, Count VIII will simply be subsumed by Counts V, VI

and VII. Nevertheless, § 1981a's remedies are not available to ADEA plaintiffs. For this reason,

the Court's dismissal of Count IV makes a dispositive difference. Shaffer may not pursue

compensatory damages (and, hence, has no statutory right to a jury trial) under Counts I and II.[7]

Accordingly, with this understanding, the Court will grant the Defendants' Partial Motion to

Dismiss as to Counts IV and VIII, as well as the Defendants' Motion to Strike Shaffer's demand

for a jury trial as to Counts I and II.

---

[7]This holding will apply with equal force to Count III if it must be reinstated after the Supreme Court's decision in *Gomez-Perez v. Potter*, 06-1321. At the present time, the Court's decision to dismiss Count III has mooted the Defendants' Motion to Strike Shaffer's demand for a jury trial as to his retaliation claims under the ADEA.

### D. The Exclusivity of the Title VII and ADEA Remedies

The Defendants seek the dismissal of Counts IX, X, XI and XII on the ground that Title

VII and the ADEA provide the exclusive remedies for the allegations contained in Shaffer's

Complaint.[8]  Doc. Nos. 4, pp. 17-18, 36, pp. 5-9.  Counts IX, X and XI are based on the FTCA,

while Count XII is based on the Declaratory Judgment Act [28 U.S.C. §§ 2201-2202] and the

Due Process Clause of the Fifth Amendment.  Doc. No. 1, ¶¶ 105-147.  The FTCA's statutory

waiver of the sovereign immunity of the United States is codified at 28 U.S.C. § 2674, which

provides, in pertinent part, as follows:

> **§ 2674.  Liability of the United States**
> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
>
> If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.
>
> With respect to any claim under this chapter [28 USCS §§ 2672 et seq.], the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

28 U.S.C. § 2674.  Shaffer's FTCA claims are grounded in the torts of negligent infliction of

emotional distress, negligent supervision and negligent damage to property.  Doc. No. 1, ¶¶ 105-

---

[8]As noted earlier, the Court continues to refer to Shaffer's FTCA claims as Counts IX, X and XI even though such unexhausted claims have technically been replaced by Counts I, II and III of Shaffer's second action against the Defendants.

132.

In support of their argument that Shaffer's FTCA claims must be dismissed, the Defendants rely on the Supreme Court's decision in *Brown v. General Services Administration*, 425 U.S. 820 (1976). In *Brown*, the Supreme Court construed § 2000e-16, the provision of Title VII applicable to the federal government, to be the exclusive remedy for federal employees alleging employment-related discrimination on the basis of race, color, religion, sex, or national origin. *Brown*, 425 U.S. at 821-835. Speaking through Justice Stewart, the Supreme Court explained that Congress intended § 2000e-16 to be "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829. It was noted that a holding to the contrary would allow Congress' "careful and thorough remedial scheme to be circumvented by artful pleading." *Id.* at 833.

The Defendants argue that Shaffer's FTCA claims must be dismissed because Title VII and the ADEA provide the exclusive means of redress for discrimination based on the respective forbidden criteria. Doc. No. 36, pp. 5-9. In so contending, they apparently concede that Shaffer may proceed under the ADEA to redress discrimination based on age just as he may proceed under Title VII to redress discrimination based on sex. *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006)("Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination."). The degree to which these statutes preempt other remedies is what is at issue in this case.

In *Owens v. United States*, 822 F.2d 408 (3d Cir. 1987), the United States Court of Appeals for the Third Circuit recognized that "Title VII provides federal employees a remedy

31

that 'precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation.'" *Owens*, 822 F.2d at 410, quoting *Kizas v. Webster*, 707 F.2d 524, 542 (D.C.Cir. 1983)(citations omitted).  This recognition, however, must be understood in its proper context.  Title VII "does not subsume or preempt all claims that rely on the same nucleus of operative facts." *Brunetti v. Rubin*, 999 F.Supp. 1408, 1411 (D.Colo. 1998). Instead, Title VII preempts only "other causes of action that provide *consistent theories of relief*." *Martell v. Thompson*, 377 F.Supp.2d 760, 767 (D.N.D. 2005)(emphasis added).  For instance, Title VII does not preempt Shaffer's cause of action under the ADEA, since Title VII proscribes *sex* discrimination while the ADEA proscribes *age* discrimination.  Although Title VII has been construed to preempt constitutional claims, such constitutional claims are preempted only when the basic theory of relief is somehow premised on the idea that the Constitution forbids the applicable form of *discrimination*.  For example, the same discriminatory personnel action motived by racial animus would simultaneously violate *both* Title VII *and* the Due Process Clause of the Fifth Amendment, which has been construed to incorporate an equal protection component akin to that found in the Equal Protection Clause of the Fourteenth Amendment. *Brown*, 425 U.S. at 825, citing *Bolling v. Sharpe*, 347 U.S. 497 (1954).  In such a situation, a constitutional claim would be preempted by Title VII, which permits an aggrieved individual to proceed on a theory of relief consistent with that provided under the Due Process Clause.[9] *Fullman v. Potter*, 480 F.Supp.2d 782, 794 (E.D.Pa. 2007)(recognizing a claim of *discrimination* under the Due Process Clause as preempted by Title VII).

---

[9]There is no dispute that Shaffer is entitled to the protections of Title VII and the ADEA.  *Davis v. Passman*, 442 U.S. 228, 247 (1979)(observing that Title VII does not foreclose other remedies available to those who are not entitled to protection thereunder).

Determining whether a cause of action is based on a theory of relief consistent with that embodied within Title VII or the ADEA can be difficult. In *Mathis v. Henderson*, 243 F.3d 446 (8th Cir. 2001), the United States Court of Appeals for the Eighth Circuit seemed to opine that any claim based on the same factual allegations as those supporting a Title VII claim was preempted by Title VII. *Mathis*, 243 F.3d at 451 ("On these facts, where Mathis is so clearly using the *same factual allegations* to support both her sexual harassment claim against the USPS under Title VII and her state-law claims against her supervisor in his individual capacity, we hold that Title VII is the exclusive civil remedy available to her, and that it preempts the remaining state-law claims.")(emphasis added). The Eighth Circuit relied on *Pfau v. Reed*, 125 F.3d 927, 933 (5th Cir. 1997), in which the Fifth Circuit stated that "when the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim." Other courts, however, have read the preemptive reach of *Brown* more narrowly. In *Stewart v. Thomas*, 538 F.Supp. 891, 896 (D.D.C. 1982), the United States District Court for the District of Columbia stated that a "highly personal violation" that goes beyond the meaning of "discrimination" is separately actionable under other legal theories, even where the same violation is also actionable under Title VII. The United States Court of Appeals for the Ninth Circuit reached a similar conclusion in *Brock v. United States*, 64 F.3d 1421 (9th Cir. 1995), holding that a female employee who had endured both rape and the fondling of her breasts could proceed with battery claims under the FTCA as well as with sex discrimination claims under Title VII. Speaking through Judge Brunetti, the Ninth Circuit explained:

> Rape *can be* a form of sexual discrimination, but we cannot say to its victims that it is nothing more. This fact does not change when the defendant of the suit is the Government instead of the individual rapist.

\*\*\*

Accordingly, we hold that, because the conduct alleged in Brock's complaint is highly personal violation [sic] beyond the meaning of discrimination, the complaint states a claim that is separately actionable under the FTCA.

\*\*\*

Any contrary result would contravene the basic purposes of Title VII. For example, under a contrary rule, a federal employee whose claim involved an assault that was not precipitated because of her gender–and therefore was not also sexual discrimination–would be able to sue under the FTCA. Meanwhile, a federal employee who was assaulted because of her gender would not be able to bring suit under the FTCA because that employee's assault would also be sexual discrimination, and thus precluded by Title VII. As a result, for cases in which the United States negligently supervised, it could escape liability for damages if the misconduct at issue was *both* assaultive and discriminatory, but not if it was *solely* assaultive. This result would turn Title VII on its head.

*Brock*, 64 F.3d at 1423-1424 (emphasis in original; footnote omitted). Thus, the focus of the Fifth Circuit and the Eighth Circuit on whether the additional claims are a part of the same nucleus of *facts* as the Title VII claims has not been uniformly accepted by federal courts addressing the issue of preemption.

This Court is convinced that the Court of Appeals for the Third Circuit would follow a rule closer to that applied by the Ninth Circuit in *Brock* than to the overbroad rule applied by the Fifth Circuit in *Pfau* and the Eighth Circuit in *Mathis*. In so observing, the Court is guided by the Court of Appeals' decision in *Francis v. Mineta*, 505 F.3d 266 (3d Cir. 2007). In *Francis*, the Court of Appeals held that a plaintiff who claimed that he had been discharged because of his religious observance (i.e., his failure to remove dreadlocks in accordance with a mandatory grooming policy) could not proceed with an action under the Religious Freedom Restoration Act of 1993 ("RFRA") [42 U.S.C. §§ 2000bb-2000bb-4], since Title VII provided similar protection against discrimination on the basis of religious observance. *Francis*, 505 F.3d at 267-272. In so

holding, the Court of Appeals placed specific reliance on the definition of the term "religion"

codified at 42 U.S.C. § 2000e(j), which provides:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). The Court of Appeals reasoned that since Title VII's prohibition on

religion-based discrimination incorporated the language of this definition, thereby prohibiting

discrimination against those who engage in "religious observance and practice," Title VII

preempted any remedy otherwise available to the plaintiff under the RFRA. *Francis*, 505 F.3d at

271. It was noted that the "RFRA subsumes the prohibition on employment discrimination that

is the hallmark of Title VII." *Id.* at 270. Since the RFRA claim at issue was based on nothing

more than an allegation of the same form of *discrimination* prohibited by Title VII, the Court of

Appeals determined that the claim was preempted by Title VII, and that it could not proceed

because of the plaintiff's failure to exhaust his administrative remedies in accordance with Title

VII. *Id.* at 272.

By relying on Title VII's definition of the term "religion" in order to determine that the

RFRA had subsumed the plaintiff's Title VII claim, the Court of Appeals appeared to base its

decision on the fact that the RFRA claim at issue was based on nothing more than the same kind

of *discrimination* that was simultaneously prohibited by Title VII. *Id.* at 273 (Stapleton, J.,

concurring)("Federal employees like Francis, who allege religious *discrimination*, would have no

need to exhaust their administrative remedies under Title VII if they could go directly to federal

court with *identical* claims framed as RFRA claims.")(emphasis added). There was no

assumption that the RFRA claim was preempted by Title VII solely because the *same set of facts* supported both a Title VII claim and a RFRA claim. Thus, the Court is not convinced that all other claims arising from the same set of facts as Title VII and ADEA claims are necessarily preempted by those antidiscrimination statutes. The dispositive question, for purposes of preemption, is whether the other claims are based on allegations of *discrimination*, or whether they are based on allegations pertaining to some distinct legal theory. "[A]lthough the reach of the *Brown* decision is broad, it cannot act to pre-empt causes of action which, while arising from the same set of facts, are completely distinct from discrimination." *Baird v. Haith*, 724 F.Supp. 367, 373 (D.Md. 1988). Instead, the *Brown* rationale was directed at cases "in which an aggrieved employee attempts to frame what is, in the end, a Title VII claim under non-Title VII provisions." *Person v. United States Department of Agriculture*, 593 F.Supp. 1054, 1958 (E.D.Wis. 1984). With that in mind, the Court now turns to Shaffer's claims under the FTCA.

Shaffer's FTCA claims are based on the torts of negligent infliction of emotional distress, negligent supervision and negligent damage to property. Doc. No. 1, ¶¶ 105-132. In Count IX, Shaffer alleges that the United States, through the negligent acts of its employees, failed to provide him with a supervisor, an oral hygienist, specialist dentists and dental assistants "who were agreeable to assisting [him] in performing his duty and would not *discriminate* against him[,]" thereby inflicting emotion distress upon him. *Id.*, ¶ 108 (emphasis added). In Count X, he avers that Szabo negligently supervised Boyle and Thompson, permitting them to engage in a pattern of unlawful *discrimination*. *Id.*, ¶ 116. In Count XI, he alleges that Szabo, Wood and Mehta negligently damaged his property (i.e., his entitlement to continue practicing as a dentist for the Butler VAMC) by failing to provide him with a supervisor, an oral hygienist, specialist

36

dentists and dental assistants "who were agreeable to assisting [him] in performing his duty and would not *discriminate* against him." *Id.*, ¶ 128 (emphasis added). A plain reading of the Complaint reveals that Shaffer's FTCA claims are based on the same allegations of *discrimination* upon which he bases his Title VII and ADEA claims.

Shaffer avers that he suffered emotional distress as a result of the Defendants' negligence. *Id.*, ¶¶ 110, 121. These averments, however, do not move the nature of the underlying conduct beyond the realm of mere discrimination. Through such prayers for relief, Shaffer simply seeks under generalized tort theories the same compensatory damages available to him under § 1981a for violations of Title VII. 42 U.S.C. § 1981a(b)(3)(recognizing future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as forms of compensatory damages); *Stewart*, 538 F.Supp. at 896-897 (dismissing a claim for intentional infliction of emotional distress to the extent that the plaintiff's emotional injuries were the result of a stressful work environment precipitated by discrimination). The holding in *Brown* would be rendered a dead letter if these same remedies could be pursued under the FTCA pursuant to generalized tort theories for the same *discriminatory* conduct which renders the Defendants liable under Title VII and the ADEA. *Brown*, 425 U.S. at 833 ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."). The fact that compensatory damages of the kind described in § 1981a are not available under the ADEA is of no dispositive significance. Discrimination based on age is still *discrimination*, and the preemptive reach of the ADEA's substantive provisions is not limited by reference to the remedies available thereunder. The averments concerning Shaffer's loss of

property (i.e., his loss of an entitlement to practice dentistry for the Butler VAMC) allege nothing beyond discriminatory "personnel actions" for purposes of §§ 633a(a) and 2000e-16(a). Under these circumstances, it is clear that Shaffer's FTCA claims are preempted by Title VII and the ADEA, which provide Shaffer with his exclusive means of redress for discrimination based on sex and age.[10] *Briggs*, 463 F.3d at 517. Consequently, the Court must dismiss Counts IX, X and XI of Shaffer's Complaint. This determination moots the Defendants' Motion to Strike Shaffer's demand for a jury trial as to these claims.

In Count XII of the Complaint, Shaffer seeks injunctive and declaratory relief for alleged violations of the Due Process Clause of the Fifth Amendment. Doc. No. 1, ¶¶ 133-147. It is clear that, where a plaintiff alleges *discrimination* on the basis of sex or age, he or she must proceed exclusively under Title VII or the ADEA. This is true even where such discrimination also violates the Constitution. *Gissen v. Tackman*, 537 F.2d 784, 785-786 (3d Cir. 1976). The Defendants argue that Count XII must be dismissed because it is based on constitutional violations.

The problem with the Defendants' argument is that it relies on too general a premise. While Title VII and the ADEA preempt federal employees' constitutional claims *based on* sex and age discrimination, not every claim brought *with* Title VII and ADEA claims can be fairly characterized as *discrimination* claims. In *Brown*, the Supreme Court spoke of unconstitutional discrimination as that which violated the Due Process Clause, which includes an equal protection component applicable to the federal government. *Brown*, 425 U.S. at 825-835. Where the same

---

[10]In light of this holding, there is no need for the Court to address the Defendants' alternative arguments concerning the application of the Federal Employees' Compensation Act ("FECA") [5 U.S.C. § 8101 *et seq.*] and the FTCA's statutory exemptions in this case. Doc. No. 36, pp. 10-20.

*discrimination* simultaneously violates *both* the exclusive antidiscrimination statutes (i.e., Title VII and the ADEA) *and* the Due Process Clause, a plaintiff may proceed *only* under the antidiscrimination statutes. *Briggs*, 463 F.3d at 517. In each Third Circuit decision in which Title VII or the ADEA has been found to be the exclusive remedy for the plaintiff in question, the allegations have generally centered on some form of employment discrimination. *Francis*, 505 F.3d at 267-272 (termination from employment based on adherence to a religious observance); *Owens*, 822 F.2d at 409-412 (sexual harassment resulting in a hostile work environment); *Purtill v. Harris*, 658 F.2d 134, 135-138 (3d Cir. 1981)(failure to promote on the basis of age, and harassment in retaliation for filing complaints); *Gissen*, 537 F.2d at 785-786 (denial of promotions on the basis of race and religion).

In Count XII, Shaffer does not appear to base his Fifth Amendment claims on sex or age discrimination. Instead, he bases such claims on the procedures used to prevent him from acting in his capacity as a dentist. Doc. No. 1, ¶¶ 133-147. Shaffer alleges that, after the Department issued him a letter implementing the final agency determination and directing him to return to duty, he was not actually permitted to resume his regular duties. *Id.*, ¶ 135. That determination apparently placed Shaffer under further investigation. *Id.*, ¶ 136. Shaffer filed objections to that portion of the determination on October 4, 2006. *Id.* In a letter dated January 16, 2007, the Department's Acting Principal Deputy Undersecretary for Health, Gerald Cross ("Cross"), overruled Shaffer's objections. *Id.* Michael Moreland ("Moreland"), the Acting Director of the Butler VAMC, convened a PSB against Shaffer, and a non-evidentiary hearing was held on January 12, 2007. *Id.*, ¶ 137. Shaffer apparently filed objections to the PSB, but Moreland failed to respond to them. *Id.*, ¶ 138. As of the date on which this action was commenced, no decision

by the PSB had been issued. ¶ 139. Shaffer alleges that the Department has made stigmatizing, false allegations of incompetence against him, thereby foreclosing other employment opportunities. *Id.*, ¶ 141. He avers that he requested a name-clearing hearing and the expungement of his personnel file, but that these requests were denied. *Id.*, ¶ 142.

The theory relied upon by Shaffer to support his claims under the Due Process Clause can be traced to the Supreme Court's decision in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971). In *Constantineau*, referring to the Due Process Clause of the Fourteenth Amendment, the Supreme Court explained that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Constantineau*, 400 U.S. at 437. Consistent with its longstanding admonition that the Due Process Clause is not a "font of tort law," the Supreme Court has construed the language in *Constantineau* to require a plaintiff alleging the deprivation of a liberty or property interest to establish more than mere defamation by a government official. In *Paul v. Davis*, 424 U.S. 693, 701 (1976), speaking through Justice Rehnquist, the Supreme Court explained that *Constantineau* did "not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." The phrase "because of what the government is doing to him," as used in *Constantineau*, was construed to refer to an alteration of one's status under state law. *Paul*, 424 U.S. at 708-709 ("'Posting,' therefore, significantly altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural standards.").

In the Complaint, Shaffer avers as follows:

60.  The conduct of David Wood, Marsha Mehta, Tracy Boyle and Linda Thompson as herein described was motivated by a conscious desire to cause a termination of Plaintiff's employment because of his age and/or gender.

***

140.  Defendant Secretary Nicholson, and the Acting Principal Deputy Under Secretary for Health, as well as the Acting Director of the Butler VAMC, as officials of the Agency rendering the decisions on behalf of the Agency, have engaged in unconstitutional and unlawful conduct regarding the continuation of the PSB which violates clearly-established constitutional rights of which a reasonable person as an official of the Agency would have known, and thus they are not protected by the doctrine of qualified immunity.

141.  The Agency has made stigmatizing, materially false statements against Plaintiff which have imposed on him an inference of other disability and incompetence that forecloses Plaintiff's freedom to take advantage of other employment opportunities, and he remains under the control of the PSB, awaiting yet another decision based on the same evidence which was before the DAB.

142.  The procedure provided by the Agency does not remedy the harm to Plaintiff's property and liberty interests, as Plaintiff requested a name-clearing hearing and expungement of his personnel file, including the faulty peer/clinical reviews, which was timely requested and denied, and instead is under a continued investigation of his competence to practice dentistry.

143.  A reasonable official in the position of Defendant Secretary Nicholson, and the Acting Principal Deputy Under Secretary for Health, as well as the Acting Director of the Butler VAMC should have known that convening a PSB against Plaintiff after his successful appeal to the DAB, was a violation of Plaintiff's constitutional rights, as these officials convened the PSB based on information which came from individuals who were known to have deliberately provided false material information to have Plaintiff fired by influencing the decision of the peer reviewer and the DAB panel members, and that the false information was forwarded deliberately without verifying that information, and their actions are an abuse of any official power, which shocks the conscience.

144.  Defendant Agency has failed to properly act on Plaintiff's timely request for re-privileging/re-credentialing, against the Agency's policies which incorporate due process guarantees, which has interfered with Plaintiff's property and liberty interests; and the failure to restore Plaintiff's privileges after the FAD is an abuse of any official power, which shocks the conscience.

Doc. No. 1, ¶¶ 60, 140-144.  A plain reading of the Complaint reveals that Shaffer alleges that the actions of Wood, Mehta, Boyle and Thompson were motived by a discriminatory animus, whereas the actions (or inactions) of Nicholson, Cross and Moreland were simply not in compliance with the Due Process Clause of the Fifth Amendment.  Count XII, which is based on the conduct of Nicholson, Cross and Moreland, does not appear to be within the purview of Title VII or the ADEA.  *Francis*, 505 F.3d at 271, n. 6.  Shaffer's claims under the Due Process Clause cannot be fairly characterized as *discrimination* claims, since the alleged unconstitutional conduct by Nicholson, Cross and Moreland was unrelated to the discriminatory animus harbored by Wood, Mehta, Boyle and Thompson.

In *Ray v. Nimmo*, 704 F.2d 1480 (11th Cir. 1983), the Court of Appeals for the Eleventh Circuit was faced with a similar situation.  In a per curiam opinion, the Eleventh Circuit explained:

> In their motion to dismiss, the defendants contended that Ray's exclusive remedies were statutory actions for discrimination under Title VII and the ADEA. The district court apparently agreed with this contention, and dismissed Ray's Fifth Amendment claim.  If appellant's claims were grounded solely in age and sex discrimination, defendant's contention certainly would be correct.  *See Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976)(Title VII provides exclusive judicial remedy for claims of sex discrimination in federal employment); *Paterson v. Weinberger*, 644 F.2d [521, 524-525 (5th Cir. 1981)](ADEA constitutes exclusive remedy for age discrimination in federal employment).  Ray's Fifth Amendment claim, however, is not based on age discrimination.  Rather, she contends that had the VAMC abided by the terms of its merit promotion rules, she would have been awarded a promotion.  She argues that in failing to abide by those rules, the VAMC deprived her of a protected interest without due process of law.  *See Vitarelli v. Seaton*, 359 U.S. 535, 539-46, 79 S.Ct. 968, 972-76, 3 L.Ed.2d 1012 (1959).  In our opinion, such a claim of unconstitutional deprivation is distinct from any claim of discrimination alleged by the appellant.  Thus, *Brown* and *Paterson* are

distinguishable, and appellant's Fifth Amendment claim should not have been disposed of on the pleadings.

*Ray*, 704 F.2d at 1485 (footnote omitted).  The Court is persuaded by this analysis.  If Shaffer were alleging sex or age *discrimination* in violation of the equal protection component of the Due Process Clause, such constitutional claims would surely be preempted by Title VII and the ADEA.[11]  Count XII, however, alleges constitutional violations which have nothing to do with discrimination based on sex or age.  "[A]lthough the reach of the *Brown* decision is broad, it cannot act to pre-empt causes of action which, while arising from the same set of facts, are completely distinct from discrimination."  *Baird*, 724 F.Supp. at 373.  Thus, the Defendants' Partial Motion to Dismiss will be denied as to Count XII.

### E.  The Dismissal of the United States of America as a Party

Title VII explicitly provides that an aggrieved federal employee may bring a civil action in which "the head of the department, agency, or unit, as appropriate, shall be the defendant."  42 U.S.C. § 2000e-16(c).  Thus, the only proper defendant in a Title VII action of this kind is the head of the Department, Secretary Peake.  *Daly v. United States Department of the Army*, 860 F.2d 592, 593 (3d Cir. 1988).  Although the ADEA does not explicitly state that an action brought thereunder shall be commenced against the appropriate department head, a similar rule has been applied in ADEA cases.  *Ellis v. United States Postal Service*, 784 F.2d 835, 838 (7th

---

[11]A meritorious claim that unequal treatment by the federal government violates the Due Process Clause of the Fifth Amendment relies on the premise that such treatment is unconstitutional precisely *because of* its discriminatory character.  *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995)("The injury in cases of this kind is that a 'discriminatory classification prevent[s] the plaintiff from competing on an equal footing.'")(brackets in original), quoting *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 667 (1993).  The same cannot be said of a due process claim which relies on the failure of the government to provide or implement fair procedures in connection with a deprivation of a liberty or property interest (unless, of course, procedural protections are not provided or implemented solely *because of* a discriminatory animus).

Cir. 1986); *Gillispie v. Helms*, 559 F. Supp. 40, 41-42 (W.D.Mo. 1983).  The Court also notes

that the United States of America is not listed as a defendant in Count XII.  Doc. No. 1, ¶¶ 133-

147.  The United States is a party in this action only because Shaffer has filed FTCA claims.

Since those claims must be dismissed, the United States must be dismissed as a defendant in this

lawsuit.

### F.  Shaffer's Motion to Assess Costs

Shaffer has filed a Motion to Assess Costs, contending that the motions filed by the

Defendants in this case have caused him to endure "an undue burden and additional harassment

in attempting to bring his claims to this Court."  Doc. No. 14, p. 5.  He does not explain precisely

*why* costs should be assessed against the Defendants.  Moreover, the Court has found most of the

arguments raised by the Defendants to be meritorious.  Hence, Shaffer's Motion to Assess Costs

will be denied.

## IV.     CONCLUSION

The parties do not dispute that conduct occurring before September 19, 2005, is not

actionable under Counts II, VI and VII.  For the sake of clarity, these counts will be dismissed as

to conduct occurring before that date.  Shaffer, of course, remains free to pursue Counts II, VI

and VII as to all subsequent conduct alleged in the Complaint.  The Court does not construe the

ADEA to provide federal employees with a cause of action against their employers for

retaliation.  Therefore, Count III will be dismissed without prejudice.  Should this Court's

conclusion prove the be incorrect when the Supreme Court issues its decision in *Gomez-Perez v.*

*Potter*, 06-1321, Shaffer can seek leave to have Count III reinstated.  The plain language of §

1981a indicates that it applies to claims under Title VII, but not to claims under the ADEA.

Consequently, Shaffer may pursue compensatory damages and a jury trial only under Title VII. The Court will strike Shaffer's demand for a jury trial as to Counts I and II. If Count III needs to be reinstated at a later date, Shaffer's demand for a jury trial will be stricken as to that count as well. Since § 1981a does not create a cause of action, Counts IV and VIII will be dismissed. Despite the dismissal of Count VIII, however, Shaffer remains free to pursue the remedies available under § 1981a as to his Title VII claims. Shaffer's FTCA claims for negligent infliction of emotional distress, negligent supervision and negligent damage to property are based on the same acts of discrimination for which Title VII and the ADEA provide exclusive remedies. Thus, Counts IX, X and XI (as replaced by Counts I, II and III of Shaffer's second action) will be dismissed. The Defendants' Motion to Strike Shaffer's demand for a jury trial is moot as to these claims under the FTCA. Count XII cannot be fairly characterized as a count based on unconstitutional discrimination based on sex or age. Instead, it alleges that the procedures employed by the Department with respect to Shaffer were not in compliance with the Due Process Clause of the Fifth Amendment. The Defendants move for the dismissal of Count XII on the ground that Shaffer's constitutional claims are preempted by Title VII and the ADEA. The Court does not believe that such claims are preempted. Accordingly, the Defendants' Partial Motion to Dismiss will be denied as to Count XII. The United States of America will be dismissed as a party in this case. Finally, because Shaffer's Motion to Assess Costs has no merit, it will be denied. An appropriate order will follow.

Date: March 24, 2008

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Anthony P. Picadio, Esquire
Picadio, McCall, Miller & Norton
600 Grant Street
4710 USX Tower
Pittsburgh, PA 15219

Christy C. Wiegand, AUSA
U. S. Attorney's Office
Suite 4000, USPO and Courthouse
700 Grant Street
Pittsburgh, PA 15219