**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KIM RONCE SHAFFER, D.D.S.,            )
                                                      )
      **Plaintiff,**                                 )
                                                      )
      **v.**                                            )     **Civil Action No. 07-298**
                                                      )     **Electronic Filing**
ERIC K. SHINSEKI,[1]                     )
SECRETARY OF THE DEPARTMENT )
OF VETERANS AFFAIRS,               )
                                                      )
      **Defendant.**                               )

## OPINION

## I.    INTRODUCTION

This matter comes before the Court on the Plaintiff's Motion for Leave to Amend (*Document No. 53*). For the reasons that follow, the motion will be granted in part and denied in part.

## II.    BACKGROUND

Plaintiff Kim Ronce Shaffer, D.D.S. ("Shaffer"), commenced this action against Secretary of Veterans Affairs R. James Nicholson ("Secretary Nicholson") and the United States of America on March 8, 2007.[2] Doc. No. 1. He alleged violations of both Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. § 2000e *et seq.*] and the Age Discrimination in Employment Act ("ADEA") [29 U.S.C. § 621 *et seq.*], based on hostile work environment,

---

[1]Former Secretary of Veterans Affairs R. James Nicholson was initially named as a defendant in this case. On December 14, 2007, the United States Senate confirmed James B. Peake as the new Secretary of Veterans Affairs. At that time, Secretary Peake was automatically substituted for former Secretary Nicholson as a defendant pursuant to Federal Rule of Civil Procedure 25(d). Subsequently, on January 20, 2009, shortly after the inauguration of President Barack H. Obama, Eric K. Shinseki was confirmed by the United States Senate as the Secretary of Veterans Affairs for the new administration. Consequently, in accordance with Rule 25(d), Secretary Shinseki has been substituted for former Secretary Peake as a defendant.

[2]The Court acknowledges that, at this point, Secretary Shinseki is the only defendant in this case. Nevertheless, the Court will continue to refer to Secretary Shinseki and the United States of America as the "Defendants" throughout this opinion, since the arguments raised in opposition to the instant Motion for Leave to Amend are essentially made on behalf of the United States.

disparate treatment and retaliation theories. Doc. No. 1, ¶¶ 63-79, 86-99. He also asserted claims for gender and age discrimination under 42 U.S.C. § 1981a. *Id.*, ¶¶ 80-85, 100-104. Under the Federal Tort Claims Act ("FTCA") [28 U.S.C. § 2671 *et seq.*], he sought redress for the asserted torts of negligent infliction of emotional distress, negligent supervision and negligent damage to property. *Id.*, ¶¶ 105-132. In addition, he sought injunctive and declaratory relief for violations of the Due Process Clause of the Fifth Amendment. *Id.*, ¶¶ 133-147.

On May 10, 2007, the Defendants filed a Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), seeking, *inter alia*, the dismissal of Shaffer's FTCA claims for failure to exhaust administrative remedies in accordance with 28 U.S.C. § 2675(a). Doc. No. 3, pp. 15-17. Shaffer responded to this motion on May 11, 2007, by filing an administrative tort claim with the Veterans Affairs Department's Office of Regional Counsel, seeking damages in the amount of $12,000,000.00. Doc. No. 24-2, p. 26. The claim was denied on September 6, 2007. *Id.*, pp. 26-27. On September 13, 2007, Shaffer filed a separate action against the Defendants, asserting FTCA claims for negligent infliction of emotional distress, negligent supervision and negligent damage to property. CV-07-1234, Doc. No. 1, ¶¶ 7-34. He also sought leave to withdraw the unexhausted FTCA claims which he had pursued in this action, contending that they had been replaced by the exhausted FTCA claims filed in the second action. Doc. No. 24. The Court granted Shaffer leave to withdraw his unexhausted claims. Doc. No. 25. Shaffer filed a Motion to Consolidate on September 19, 2007, seeking to consolidate this action with the one involving his exhausted FTCA claims. Doc. No. 26. The actions were consolidated on September 27, 2007. Doc. No. 28. This series of procedural maneuvers remedied the lack of exhaustion which had been the Defendants' initial basis for seeking dismissal of Shaffer's FTCA claims. Nevertheless, on December 6, 2007, Defendants filed a Motion to Dismiss Shaffer's FTCA claims on other grounds. Doc. No. 35.

On March 24, 2008, the Court issued an opinion dismissing Shaffer's retaliation claims under the ADEA, his claims under § 1981a, and his FTCA claims. *Shaffer v. Peake*, Civil Action No. 07-298, 2008 WL 794470, 2008 Dist. LEXIS 22967 (W.D.Pa. March 24, 2008). Because the FTCA claims were dismissed, the United States was dismissed as a party to this

action.  On July 30, 2008, Shaffer's ADEA retaliation claims were reinstated in accordance with the decision of the United States Supreme Court in *Gomez-Perez v. Potter*, 128 S.Ct. 1931 (2008).  Doc. No. 62.

Shaffer filed the instant Motion for Leave to Amend on June 9, 2008, seeking to reassert FTCA claims for negligent infliction of emotional distress and negligent supervision, and to reinstate the United States as a defendant in this action.  Doc. No. 53.  This motion and its appropriate resolution are best understood by reference to the allegations already contained in Plaintiff's Complaint.

## A.      Facts Alleged in the Complaint

Shaffer is an adult male who resides in Butler, Pennsylvania, and is employed by the Veterans Affairs Medical Center ("VAMC") in Butler.  Doc. No. 1, ¶ 1.  When this action was commenced, he was seventy-four years of age.  *Id.*, ¶ 4.  Shaffer is a licensed dentist in good standing in the Commonwealth of Pennsylvania, and he has been employed by the Butler VAMC since 1971.  *Id.*  He was appointed as a dentist pursuant to 38 U.S.C. § 7401(1), and he completed his probationary period in 1973.  *Id.*, ¶ 5.  Since his appointment, Shaffer has been consistently rated as "qualified" to perform his duties in his annual performance evaluations.  *Id.*, ¶ 6.  He has also received awards for his performance.  *Id.*

Since 2000, Linda Thompson ("Thompson") and Tracy Boyle ("Boyle") have been employed as dental assistants to both Shaffer and a younger, female dentist.  *Id.*, ¶ 7.  Their duties have included preparing operating rooms and patients, passing instruments to the dentists, and ensuring that all rooms, instruments and equipment remain clean.  *Id.*  David Wood ("Wood") is also employed by the Department of Veterans Affairs.  *Id.*, ¶ 8.  At one point, he was the Director of the Butler VAMC.  *Id.*  As such, he was responsible for supervising agency personnel on behalf of Charleen R. Szabo ("Szabo"), who was the Director of the Veterans Integrated Services Network ("VISN").  *Id.*  Varsha Mehta ("Mehta") is the Butler VAMC's Chief of Staff.  *Id.*, ¶ 9.  At all relevant times, she was responsible for supervising agency personnel on behalf of the Director of the Butler VAMC.  *Id.*  Although she is not a dentist and holds no qualifications in the field of dentistry, Mehta is Shaffer's immediate supervisor.  *Id.*, ¶

10. The Butler VAMC has not had a Chief of Dental Service to supervise dental employees since 1998. *Id.*, ¶ 11. For this reason, Thompson and Boyle were supervised by a respiratory therapist with no dental background. *Id.*, ¶ 12. In 2004, this respiratory therapist completed all performance evaluations for members of the dental staff, including those for Shaffer, Thompson and Boyle. *Id.*, ¶ 13.

Shaffer alleges that, during the spring of 2005, Thompson and Boyle decided that they no longer wanted to work for him. *Id.*, ¶ 14. They allegedly conspired to engage in a pattern of conduct designed to make Shaffer's work environment hostile and, ultimately, to force the termination of his employment. *Id.* On March 10, 2005, Thompson and Boyle made false allegations about Shaffer to Wood and Mehta. *Id.*, ¶ 15. These allegations were made both orally and in writing. *Id.* Thompson and Boyle claimed that Shaffer could not perform his duties as a dentist because of mental confusion, shaky hands, and poor eyesight. *Id.*, ¶ 16. They also contended that he was slow and ineffectual, that he lacked competence, that he did not show enough empathy to his patients, and that he had injured patients without completing required reports about such injuries. *Id.* The most serious allegations lodged against Shaffer by Thompson and Boyle included statements that he had used dental instruments on patients until they were visibly bloody, and that he had been spreading loathsome diseases to his patients. *Id.*

Shortly thereafter, Wood and Mehta agreed that Shaffer should be put on an indefinite administrative leave, and barred from the Butler VAMC, until after a non-evidentiary hearing before three agency employees. *Id.*, ¶ 17. They did not consult anyone with expertise in the field of dentistry before taking this action. *Id.* Despite the allegedly "intolerable" conditions placed on Shaffer, he did not resign. *Id.*, ¶ 18. Shaffer received a hand-delivered summons at his home on March 14, 2005, directing him to appear for a hearing the following day. *Id.*, ¶ 19. He was not informed of the charges against him, nor was he provided with written notification of the summary suspension of his privileges. *Id.* These omissions constituted violations of agency policies. *Id.*

A non-evidentiary hearing was held on March 15, 2005, before a panel of three employees, none of whom were dentists. *Id.*, ¶¶ 17, 20. Thompson and Boyle both testified at

the hearing, making false accusations against Shaffer. *Id.*, ¶ 20. Because the members of the panel were not dental experts, they took no action after the hearing. *Id.*, ¶ 21. Wood responded in May of 2005 by convening a panel of experts in the field of dental infection control to investigate the allegations against Shaffer. *Id.*, ¶ 22. This panel included an agency infection control physician and three dentists. *Id.* Two of the dentists were employed by the Department of Veterans Affairs, while the third was employed by the United States Air Force. *Id.* The expert panel found the allegations against Shaffer to be without merit, determining that they had been motivated by a discriminatory animus and recommending that Shaffer's patients not be notified of the investigation. *Id.*, ¶ 23.

Shaffer returned to work on May 23, 2005. *Id.*, ¶ 24. The Department took no action to remedy the "discrimination" against him. *Id.* Thompson and Boyle refused to provide Shaffer with assistance. *Id.* Shaffer informed Mehta about the situation and requested further assistance, but his request was ignored. *Id.* Notwithstanding the expert panel's recommendation to the contrary, Wood sent letters to 2,086 former patients on June 9, 2005, advising them to call a help-line created for those believed to have contracted loathsome diseases from Shaffer during the previous six years. *Id.*, ¶ 25. A staff meeting was held on June 20, 2005. *Id.*, ¶ 26. At that meeting, Mehta ridiculed and demeaned Shaffer in front of the entire dental staff, referring to him as slow, ineffectual and incompetent. *Id.* She said this while knowing that Shaffer was both competent and productive, and that his patients were pleased with his services. *Id.* Throughout the spring and summer of 2005, Wood repeated several false allegations made by Mehta, Thompson and Boyle about Shaffer to numerous individuals. *Id.*, ¶ 27. One such communication was made in the form of an electronic mail message to all employees of the Butler VAMC. *Id.* Wood also made statements about Shaffer to several dentists and public officials, as well as to the Pennsylvania Department of Health and the Joint Commission on Accreditation of Health Organizations ("JCAHO"). *Id.*

In August 2005, Mehta withheld Shaffer's application for the renewal of his professional privilege to work as a dentist at the Butler VAMC. *Id.*, ¶ 28. This action allegedly constituted a violation of agency policy. *Id.* On September 21, 2005, Mehta made statements to the

television, radio and newspaper media indicating that a member of the Butler VAMC's dental staff may have caused patients to contract loathsome diseases by using unsterilized equipment. *Id.*, ¶ 29. The next day, Thompson and Boyle submitted to Wood and Mehta a list of false allegations against Shaffer involving sixty new patients. *Id.*, ¶ 30. These allegations were based on notes which had been secretly compiled by Thompson and Boyle over a period of four months. *Id.* Wood and Mehta responded on September 23, 2005, by placing Shaffer on a directed reassignment to nonprofessional duties. *Id.*, ¶ 31. They did not discuss the new allegations with a dental expert, nor did they provide Shaffer with written notification of the suspension of his privileges. *Id.*

On September 27, 2005, Wood directed Anne M. Mikolajczak ("Mikolajczak"), an employee of the Butler VAMC, to repeat the new allegations made by Thompson and Boyle to the sixty patients appearing on the list which had been submitted five days earlier. *Id.*, ¶ 32. In accordance with Wood's instructions, Mikolajczak recorded the responses of these patients in the form of written incident reports. *Id.* She also notified dentists in the community that Shaffer could not see his patients. *Id.* One day later, on September 28, 2005, Mikolajczak telephoned Shaffer to inform him that he was being terminated, and that he should submit his professional license to Wood. *Id.*, ¶ 33. She made this telephone call pursuant to Wood's instructions. *Id.* After the passage of a few days, Wood informed the JCAHO that Shaffer was being terminated because of his alleged incompetence in the field of dentistry. *Id.*, ¶ 34.

During the fall of 2005, Wood and Mehta forwarded false information about Shaffer (based on the September 22, 2005, list prepared by Thompson and Boyle) to a dentist employed by the Department in Philadelphia, Pennsylvania, for "peer/clinical reviews." *Id.*, ¶ 35. Shaffer was not given an opportunity to respond. *Id.* On October 31, 2005, Shaffer requested counseling with the Department's Office of Resolution Management ("ORM") for Equal Employment Opportunity ("EEO") claims, naming Mehta as the responding authority for the Department. *Id.*, ¶ 36. Mehta served Shaffer with a Notice of Proposed Discharge on November 23, 2005, based on three charges related to the prior allegations made by Thompson and Boyle. *Id.*, ¶ 37. These charges were related to accusations that Shaffer abused his patients, exposed them to loathsome

diseases by failing to adhere to appropriate infection control practices, and failed to obtain their informed consent before performing operations. *Id.* The Notice of Proposed Discharge also referenced the peer/clinical reviews. *Id.*

Shaffer, through his legal counsel, wrote a letter to Szabo on December 8, 2005, stating that at least five employees of the Butler VAMC were acting in concert to have him fired and publicly humiliated. *Id.*, ¶ 38. He asked her to take control of the situation. *Id.* A few days later, Shaffer served a request for documents on the Butler VAMC pursuant to the Freedom of Information Act ("FOIA") [5 U.S.C. § 552]. Wood advised Shaffer that he would have to pay $24,423.50 to initiate the document production process, and that the documents would not be available until December 13, 2014. *Id.*, ¶ 40. This effectively deprived Shaffer of a legitimate opportunity to defend himself. *Id.*

Shortly before December 15, 2005, Shaffer took his dental appointment book to the area in which he was assigned to work. *Id.*, ¶ 41. He did this in order to prepare for a session which had been called for the purpose of mediating his EEO claims. *Id.* On December 20, 2005, Mehta demanded that Shaffer turn over his dental appointment book. *Id.*, ¶ 42. She denied his request for time to speak with his counsel, referring to his resistance as "insubordinate." *Id.* She indicated that Shaffer's continued possession of the appointment book constituted an improper possession and use of government property. *Id.* That same day, Mehta withdrew the original Notice of Proposed Discharge and reported Shaffer to the Regional Counsel and Office of Inspector General ("OIG") for possessing his appointment book to prepare for the EEO mediation session. *Id.*, ¶ 43. She sought the imposition of both a ten-year prison sentence and a $250,000.00 fine against Shaffer. *Id.* The agency staff attorney who was representing the Department in the EEO matter sent Shaffer's counsel a letter referring to Mehta's charge concerning the appointment book. *Id.*, ¶ 44. The letter stated, in pertinent part, as follows:

> In case you are unaware, violations of [HIPPA] calls for severe civil and criminal penalties for non-compliance, including . . . fines up to $250,000 and for imprisonment for up to 10 years . . . The decision to seek prosecution [of] a VA employee for violating HIPPA would be made by the Inspector General in collaboration with the US Attorney.
> It is my understanding that the Inspector General's office has not yet made a decision whether to refer the matter to the U.S. Attorney for prosecution.

7

*Id.* (brackets in original averment). A copy of this letter was given to Shaffer. *Id.*

Shaffer filed an administrative complaint with the ORM on January 25, 2006, alleging that he was being subjected to unlawful discrimination based on age and gender. *Id.*, ¶ 45. On February 13, 2006, Shaffer received a letter from the ORM stating that his EEO claim had been accepted for investigation. *Id.*, ¶ 46. The next day, Mehta issued to Shaffer a second Notice of Proposed Discharge, which included three additional charges. *Id.*, ¶ 47. The additional charges alleged Shaffer's unauthorized possession of government property, his unauthorized use of government property, and his insubordination. *Id.* Wood discharged Shaffer on March 2, 2006, based on the six charges in both Notices of Proposed Discharge prepared by Mehta and on the peer/clinical reviews. *Id.*, ¶ 48.

On March 3, 2006, Wood and Mehta recorded that Shaffer was absent without leave ("AWOL"), ignoring a letter from Shaffer's counsel seeking information about their expectations for him. *Id.*, ¶ 49. Shaffer appealed his discharge pursuant to 38 U.S.C. §§ 7461-7464. *Id.*, ¶ 50. A Disciplinary Appeals Board ("DAB") comprised of three Department employees (two of whom were dentists and the third of whom was a physician) heard Shaffer's appeal at an evidentiary hearing which lasted from May 22-23, 2006. *Id.* On August 18, 2006, the Department made a final agency determination adopting the recommendations of the DAB. *Id.*, ¶ 51. The DAB found that the new allegations made against Shaffer by Thompson and Boyle were not credible, and that they had probably been made on the basis of ulterior motives. *Id.* The determination vacated Shaffer's discharge, ordered that he be immediately reinstated with back pay, indicated that he should be disciplined with a "written counseling" in his personnel file for possessing the appointment book, and directed that an investigation be conducted into his competence based on the peer/clinical reviews. *Id.* The peer/clinical reviews had apparently not been used as a part of the Department's case-in-chief before the DAB. *Id.*

Although Shaffer received the determination ordering his immediate reinstatement on September 22, 2006, he did not receive instructions to return to duty. *Id.*, ¶ 52. On November 2, 2006, he received a letter from the Department directing him to report for clerical reassignment

while a Professional Standards Board ("PSB") was convened to investigate the allegations made by Thompson and Boyle, which had been included in the *ex parte* peer/clinical reviews. *Id.*, ¶ 53. Since that time, Shaffer has been allowed to perform only clerical duties which bear no relationship to his training as a dentist. *Id.*

At approximately 4:00 P.M. on January 9, 2007, the Department served Shaffer with a summons to testify at a PSB hearing on January 12, 2007. *Id.*, ¶ 54. The next day, Shaffer's counsel, who could not attend the hearing, filed a request for a continuance. *Id.*, ¶ 55. Shaffer's counsel also filed various objections with the Department, alleging various violations of federal constitutional and statutory law. *Id.* The PSB nevertheless held a non-evidentiary hearing at the Butler VAMC on January 12, 2007, before two dentists and a psychiatrist employed by the Department. *Id.*, ¶ 56. Thompson and Boyle were allowed to testify in secret. *Id.* Thus, Shaffer was not able to hear their testimony, nor was he able to confront them. *Id.*

Shaffer alleges that he has not been permitted to return to his duty as a dentist, and that he has been deprived of a statutory entitlement to practice his profession since September 23, 2005. *Id.*, ¶ 59. He avers that the conduct of Wood, Mehta, Thompson and Boyle was motivated by an animus based on age and gender. *Id.*, ¶ 60. As a result of this conduct, Shaffer has allegedly suffered damage to his professional reputation, a loss of earning power, extreme humiliation and emotional distress. *Id.*, ¶ 61. The relevant employees of the Department are alleged to have been acting within the scope of their employment. *Id.*, ¶ 62.

**B.      The Proposed Amendment**

Shaffer proposes to add additional averments to the Complaint. Because the matter comes before the Court in the present posture, the Court assumes these proposed allegations to be true.[3] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). Despite the DAB's August 2006 determination that Shaffer should be reinstated, and despite a recommendation by the PSB on January 31, 2007, that he be immediately permitted to resume

---

[3]In determining whether the proposed amendment to Shaffer's Complaint would be futile, the Court must apply the same standard as would be applied in determining whether to grant a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).

his duties as a dentist, the Butler VAMC never reinstated Shaffer. Doc. No. 53-3, ¶ 63. Instead, Shaffer was subjected to humiliating review procedures designed to deter him from seeking to return to his duties. *Id.*, ¶ 64. Specifically, Shaffer was twice told to reapply for his clinical privileges even though the Butler VAMC had already been ordered to reinstate him. *Id.*, ¶ 64(a). He was required to undergo a "proctorship" with the purported aim of receiving a "certification of competency" from his proctors. *Id.*, ¶ 65(b). In addition, he was instructed to appear for two medical examinations. First, he was told that he needed to be examined by an outside physician (who the Department regularly used to evaluate workmen's compensation claims) for the purpose of determining whether he was physically capable of performing his duties as a dentist. *Id.*, ¶ 65(c). Second, he was instructed to report to another outside physician for a geriatric neurological examination. *Id.*, ¶ 65(d). Shaffer ultimately refused to undergo the geriatric neurological examination because, by that time, it had become clear to him that the Butler VAMC had no real intention of reinstating him. *Id.*, ¶ 66.

On January 17, 2008, Mehta hand-delivered a letter to Shaffer denying his request for reappointment to the medical staff. *Id.*, ¶ 67. He had apparently sought reappointment based on a report from his proctors. *Id.* Shaffer's attorney sent a letter to Mehta and Human Resources Officer David Cord ("Cord") indicating that Shaffer would not appear for the geriatric neurological examination because Cord's deposition testimony had established no necessity for the examination. *Id.*, ¶ 82. On April 1, 2008, Mehta hand-delivered a letter to Shaffer proposing that he be discharged for insubordination in connection with his refusal to undergo a geriatric neurological examination. *Id.*, ¶ 68. Shaffer learned on May 2, 2008, that he would be discharged effective May 12, 2008. *Id.* In a letter dated May 21, 2008, the Director of the Butler VAMC informed Shaffer that he was being turned in to the Pennsylvania State Licensing Board as an incompetent dentist. *Id.*, ¶ 69. This action threatened the viability of Shaffer's license to practice dentistry. *Id.*

Shaffer seeks to reinstate his FTCA claims for the torts of negligent infliction of emotional distress and negligent supervision, and to reinstate the United States as a defendant in this action. *Id.*, ¶¶ 71-95. In the averments describing the proposed FTCA claims, Shaffer

10

incorporates by reference all of his prior allegations except for those alleging discrimination based on age or gender. Doc. No. 53-3, ¶¶ 71, 88.

## III. DISCUSSION

Federal Rule of Civil Procedure 15(a) provides:

**Rule 15. Amended and Supplemental Pleadings**
(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

FED. R. CIV. P. 15(a). Because of the Court's prior dismissal of Shaffer's FTCA claims, he can no longer amend his Complaint "once as a matter of course," and can now amend it "only by leave of court." *United States v. Union Corp.*, 194 F.R.D. 223, 232-235 (E.D.Pa. 2000). Nevertheless, Rule 15(a) expressly provides that leave to amend "shall be freely given when justice so requires." The language of the rule makes it clear that while a court retains a degree of discretion in determining whether to grant leave to amend, such discretion is not limitless. In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court declared that "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Legitimate reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005). A proposed amendment may be denied as futile where a claim asserted thereunder would be insufficient to survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).

The Defendants oppose Shaffer's Motion for Leave to Amend on the grounds of undue

delay, prejudice and futility.  Doc. No. 55, pp. 4-12; Doc. No. 58, pp. 1-10.  They focus on the length of Shaffer's delay in seeking leave to amend by pointing out that the motion was filed fifteen months after the commencement of this action, more than four months after the expiration of the Court's deadline for amending pleadings, and more than two and a half months after the close of discovery.[4]  Doc. No. 55, p. 3.  Nevertheless, the Court is not troubled by the length of the intervening period of time between the commencement of this action and the filing of the instant Motion for Leave to Amend, nor is it concerned with the fact that the deadlines referenced in the Defendants' brief had already expired prior to the filing of the motion.  It appears that Shaffer's Motion for Leave to Amend was filed in direct response to this Court's prior opinion of March 24, 2008, which dismissed Shaffer's earlier FTCA claims on the ground that they were preempted by the provisions of Title VII and the ADEA governing the rights of federal employees.  *Shaffer*, 2008 WL 794470, at *16-24, 2008 U.S. Dist. LEXIS 22967, at *50-64.  Shaffer could not have been expected to seek leave to amend prior to the issuance of the Court's earlier opinion, since that opinion is precisely what prompted Shaffer to seek leave to amend in the first place.  The Court does not attribute the late filing of the instant motion to a dilatory motive on the part of Shaffer.  Thus, the Motion for Leave to Amend cannot be denied on that basis.

The inquiry, of course, does not end there.  The Defendants also argue that a decision to grant Shaffer's motion would prejudice them and cause undue delays in the upcoming proceedings.  Doc. No. 55, pp. 5-10.  They also argue that the proposed amendment would be futile.  *Id.*, pp. 10-12.  Having reviewed the proposed amendment in light of the applicable legal principles, the Court finds the Defendants' arguments concerning the issue of futility to be persuasive.

In the prior opinion, the Court dismissed Shaffer's FTCA claims on the ground that the

---

[4]In a case management order dated October 16, 2007, the Court set January 18, 2008, as the deadline for filing motions to amend pleadings or add new parties and February 19, 2008, as the deadline for completing discovery.  Doc. No. 30, p. 2.  In a subsequent order dated February 11, 2008, the Court extended the deadline for completing discovery to March 20, 2008.  Doc. No. 46.

provisions of Title VII and the ADEA governing the rights of federal employees provided the exclusive remedies available to federal employees alleging sex-based and age-based employment discrimination. *Shaffer*, 2008 WL 794470, at *16-24, 2008 U.S. Dist. LEXIS 22967, at *50-64. This determination of the preemption issue made consideration of other issues unnecessary. Specifically, the Court observed that it did not have to address the Defendants' alternative arguments concerning the application of the Federal Employees' Compensation Act ("FECA") [5 U.S.C. § 8101 *et seq.*] and the FTCA's statutory exceptions to liability.[5] *Id.* at *64, n. 10. In declining to address those arguments, the Court did not indicate that they were without merit. The Court notes that the Defendants' arguments concerning futility focus solely on the issue of administrative exhaustion under the FTCA, irrespective of the effect that either the FECA or the FTCA's exceptions to liability may have on Shaffer's proposed new claims. Doc. No. 55, pp. 10-12; Doc. No. 58, pp. 5-10. Since Shaffer's failure to exhaust these claims would deprive the Court of subject-matter jurisdiction to entertain them if leave to amend were granted, the Court need not determine whether the claims would be barred for other reasons.

The FTCA's statutory waiver of sovereign immunity provides that, with respect to tort claims, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The FTCA incorporates "the law of the place where the act or omission complained of occurred" as the substantive law applicable to a tort claim asserted against the United States. *Id.* For this reason, whether the United States is "liable" under the FTCA can only be determined by reference to state law. *Hamilton v. United States*, 371 F.Supp. 230, 233 (E.D.Va. 1974)("The test in this case under the Federal Tort Claims Act is whether or not a private individual would be liable to the plaintiff under the law of the State of Virginia under the evidence as has here been presented."). The negligent infliction of emotional distress and negligent supervision theories posited by Shaffer, therefore, have their genesis in the law of Pennsylvania. *Coregis Insurance Co. v. City of*

---

[5]It is clear that the FECA's exclusivity of remedy provision, which is codified at 5 U.S.C. § 8116(c), does not bar Shaffer's claims under Title VII and the ADEA. *Miller v. Bolger*, 802 F.2d 660, 662-667 (3d Cir. 1986); *Dubee v. Henderson*, 56 F.Supp.2d 430, 432-434 (Vt. 1999).

*Harrisburg*, 401 F.Supp.2d 398, 404-406 (M.D.Pa. 2005); *Giannone v. Ayne Institute*, 290 F.Supp.2d 553, 565-570 (E.D.Pa. 2003). Since the FTCA constitutes a waiver of the sovereign immunity otherwise enjoyed by the United States, however, a plaintiff seeking to recover under that statute can do so only in accordance with the precise terms of the waiver enacted by Congress. *Smith v. United States*, 507 U.S. 197, 203 (1993).

The FTCA contains a provision requiring administrative exhaustion. That provision, which is codified at 28 U.S.C. § 2675, provides:

> **§ 2675. Disposition by federal agency as prerequisite; evidence**
> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.
> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.
> (c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

28 U.S.C. § 2675. In *McNeil v. United States*, 508 U.S. 106, 107-113 (1993), the Supreme Court construed § 2675(a) to mean that a plaintiff must exhaust his or her administrative remedies *before* commencing an action based on an FTCA claim, and that exhaustion subsequent to the "commencement" of an action is insufficient to satisfy the statutory "prerequisite" to suit established by Congress. That is precisely why Shaffer, instead of seeking to revive his unexhausted FTCA claims in this action, ultimately commenced a separate action (which was later consolidated with this action) in order to get his then-exhausted claims before the Court. *Sparrow v. United States Postal Service*, 825 F.Supp. 252, 254-255 (E.D.Cal. 1993).

It is undisputed that Shaffer did not exhaust the new "claims" which are the subject of his proposed amendment. Shaffer argues that he did not need to do so, since the incidents upon

which these claims are based were merely a continuation of the tortious pattern of conduct described in his previous administrative complaint. Doc. No. 57, pp. 6-9. The conduct presented in the administrative complaint is easy for the Court to identify, since it is coextensive with the Complaint that Shaffer filed to commence this action. When Shaffer exhausted his previous FTCA claims, he simply referred the Department of Veterans Affairs to his Complaint, which was attached to his administrative complaint. Doc. No. 55-2, pp. 3-24. Thus, the Department was presented with *all* of the allegations contained in the Complaint but *none* of the additional allegations contained in the proposed amendment. Whether the new "claims" have been properly exhausted depends on whether the exhaustion of the initial FTCA claims suffices to satisfy the exhaustion prerequisite with respect to the new allegations. It is that question to which the Court now turns.

Relevant to the Court's analysis is 28 C.F.R. § 14.2(a), which provides:

**§ 14.2 Administrative claim; when presented**
(a) For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by the evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a). The key word appearing in this regulation is "incident."[6] Courts have generally construed that term to refer to the "facts and circumstances" underlying a claim rather than to the legal cause of action or theory upon which that claim is based. *Mellor v. United States*, 484 F.Supp. 641, 642-643 (D.Utah 1978). Where plaintiffs have attempted to add to their

---

[6]There is some debate as to whether the statutory prerequisite to suit under the FTCA is defined by reference to § 2675 alone or by reference to § 2675 in conjunction with the regulations promulgated by the Attorney General. *Seals v. United States*, 319 F.Supp.2d 741, 744-745 (W.D.Tex. 2004). In *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11 (3d Cir. 1975), the United States Court of Appeals for the Third Circuit implicitly opined that the regulations are to be given effect in cases involving the issue of exhaustion. *National Association of Flood Insurers*, 520 F.2d at 19-20 ("Although the purpose of the Federal Tort Claims Act is essentially remedial, the procedures established pursuant to the Act nonetheless have been strictly construed inasmuch as the Act constitutes a waiver of sovereign immunity.").

complaints claims based on allegations of "incidents" which had not been fairly presented to federal agencies in administrative complaints containing allegations of distinct "incidents," courts have found the claims to be barred for lack of exhaustion. *Bethel v. United States*, 495 F.Supp.2d 1121, 1125-1126 (D.Colo. 2007); *Edmonds v. United States*, 436 F.Supp.2d 28, 34-35 (D.D.C. 2006); *Mirabal v. United States*, 675 F.Supp. 50, 52-53 (D.P.R. 1987); *Franz v. United States*, 414 F.Supp. 57, 58-59 (D.Ariz. 1976).

Shaffer "seeks the reinstatement of his same FTCA counts, separated from concepts bearing on discrimination, and the reinstatement of the United States as a party." Doc. No. 57, p. 6. The Court acknowledges that Shaffer has previously exhausted claims for negligent infliction of emotional distress and negligent supervision. Nevertheless, the rule requiring the presentment to the agency of each allegedly actionable "incident" (but not of each legal theory or cause of action) is a double-edged sword. While a plaintiff need not inform the relevant agency of each legal theory upon which he or she bases the "claim" in question, he or she must inform the agency of the particular "incident" upon which he or she bases that "claim." *Mellor*, 484 F.Supp. at 642-643; *Franz*, 414 F.Supp. at 58-59. The allegations contained in Shaffer's proposed amendment, which center on the Butler VAMC's decision to discharge him for refusing to undergo a geriatric neurological examination, were never included within an administrative complaint filed pursuant to § 2675(a).[7] The same is true of the allegations concerning the Butler VAMC's decision to turn Shaffer in to the Pennsylvania State Licensing Board as an "incompetent dentist." Shaffer cannot proceed with FTCA claims based on such personal injuries (i.e., "incidents") without first exhausting those claims in accordance with § 2675(a). *Brown v. United States*, 838 F.2d 1157, 1161, n. 9 (11th Cir. 1988)("We note that a claimant

---

[7]The Court acknowledges that an aggrieved individual seeking compensation under the FTCA need not recite every detail surrounding an actionable "incident" in order to satisfy § 2675(a)'s exhaustion requirement. The information submitted concerning a particular incident can be quite minimal. *Burchfield v. United States*, 168 F.3d 1252, 1255-1256 (11th Cir. 1999). The problem with Shaffer's proposed FTCA claims, however, is not that they are based on a vague administrative complaint. Instead, the problem is that they are based on "wholly distinct incidents" which were never the subject of an administrative complaint. *Deloria v. Veterans Administration*, 927 F.2d 1009, 1012 (7th Cir. 1991). A plaintiff such as Shaffer simply cannot present one claim to an agency and then maintain an action on the basis of a different set of facts. *Dundon v. United States*, 559 F.Supp. 469, 476 (E.D.N.Y. 1983).

would have to meet the jurisdictional requirements if a different personal injury were suffered.").

Although not squarely addressed by the courts which have elucidated the exhaustion standards applicable in this context, the language contained in § 2675(b) concerning "intervening facts" provides no support for Shaffer's argument.  A claimant alleging entitlement to compensation for an injury under the FTCA must present a claim for a "sum certain" to the relevant federal agency, and § 2675(b) bars him or her from seeking damages in excess of that sum in a subsequent action "except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the *claim* to the federal agency, or upon allegation and proof of intervening facts, relating to the *amount* of the *claim*."  28 U.S.C. § 2675(b)(emphasis added).  The statutory language indicates that the "intervening facts" referenced therein refer to facts relating to the *amount of* (but not the *basis for*) a specific *claim*. For instance, in *Nelson v. United States*, 541 F.Supp. 816 (M.D.N.C. 1982), the United States District Court for the Middle District of North Carolina was presented with a case involving a woman who had allegedly been injured by a swine flu vaccine.  She died of her injuries after exhausting her administrative remedies under the FTCA and suing the United States for $100,000.00 in damages.  After her death, the executor of her estate, who was substituted for the plaintiff as a party to the case, sought to amend the complaint in order to assert a cause of action for wrongful death and to seek damages in excess of the $100,000.00 originally sought when the action had been commenced.  The District Court reasoned that since the "incident" out of which the lawsuit had arisen (i.e., the woman's receipt of the injurious swine flu vaccine) had been the subject of the original administrative complaint, the executor was able to assert the wrongful death claim without further administrative exhaustion.  *Nelson*, 541 F.Supp. at 818.  The District Court further noted that the woman's death had potentially been an "intervening fact" affecting the *amount* of the FTCA claim, thereby permitting the executor to seek damages in excess of $100,000.00.  *Id.* ("If the vaccine did cause the decedent's personal injuries as alleged which in turn contributed to her death, then the death may well be an intervening fact affecting the amount of the claim in favor of the plaintiff.").  Under this line of reasoning it is clear that the "intervening facts" provision set forth in § 2675(b) refers to events which increase the damages

resulting from a specific "incident" rather than to events which themselves constitute distinct "incidents."

Shaffer's proposed allegations concerning the Butler VAMC's decisions to discharge him for refusing to undergo a geriatric neurological examination and to report him to the appropriate authorities for incompetence do not simply relate to facts which would entitle him to claim additional damages resulting from the claims asserted in his original administrative complaint. Instead, they relate to discrete "incidents" which potentially support new "claims." Because Shaffer has not exhausted these new claims, this Court lacks jurisdiction to entertain them. *Edmonds*, 436 F.Supp.2d at 34-35.

In a letter to the Court dated December 4, 2008, Shaffer states that he was turned in to the Pennsylvania State Licensing Board for license revocation on October 2, 2008. He argues that this incident, and his discharge of May 12, 2008, were within the scope of the Equal Employment Opportunity Commission's ("EEOC") original investigation into his charges of sex and age discrimination under Title VII and the ADEA, and that his Motion for Leave to Amend should be granted for that reason. In support of his position, he relies on *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1984), in which the United States Court of Appeals for the Third Circuit declared that "[a] victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." He also relies on *Kerns v. Drexel University*, 2008 WL 2876590, at *7-8, 2008 U.S. Dist. LEXIS 57358, at *25-30 (E.D.Pa. July 24, 2008), in which the United States District Court for the Eastern District of Pennsylvania applied *Waiters* to permit a plaintiff to pursue a discriminatory/retaliatory discharge claim that had culminated from a previously-exhausted pattern of alleged discriminatory acts by an employer.

Having reviewed the opinions in *Waiters* and *Kerns*, the Court is convinced that the reasoning employed in those decisions would embrace Shaffer's attempt to add the new averments contained in the proposed amendment in support of his pending Title VII and ADEA

18

claims.[8] It does not follow, however, that Shaffer can reassert his FTCA claims and reinstate the United States as a party. The FTCA's exhaustion requirements are not the same as those applicable to Title VII and the ADEA. As noted earlier, a plaintiff wishing to sue under the FTCA must administratively exhaust any claim springing from a particular "incident." *Franz*, 414 F.Supp. at 58. The plain language of *Waiters* indicates that a Title VII plaintiff need not exhaust claims springing from an "incident" which can be fairly characterized as "within the scope of a prior EEOC complaint" or resulting investigation. *Waiters*, 729 F.2d at 235. Thus, the FTCA's exhaustion requirements are more event specific and demanding than those applicable to Title VII and the ADEA.

In addition, the exhaustion requirements applicable to Title VII and the ADEA do not impact a federal court's subject-matter jurisdiction. *Allen v. Highlands Hospital Corp.*, 545 F.3d 387, 400-403 (6th Cir. 2008); *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), the Supreme Court held that the filing of a "timely" charge of discrimination with the EEOC is not a jurisdictional prerequisite to the commencement of an action under Title VII, but rather a requirement akin to a statute of limitations that is "subject to waiver, estoppel, and equitable tolling." The United States Court of Appeals for the Third Circuit explained in *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007), that the reasoning in *Zipes* is not limited to a party's failure to *timely* exhaust his or her administrative remedies with the EEOC, and that it applies with equal force to a party's *complete failure* to exhaust his or her administrative remedies under Title VII. Referencing its prior decision in *Waiters*, the Court of Appeals took note of the "non-jurisdictional nature" of Title VII's administrative remedial scheme. *Wilson*, 475 F.3d at 175; see also *Robinson*, 107 F.3d at 1021 ("Moreover, in Title VII cases courts are permitted in certain limited circumstances to equitably toll filing requirements, even if there has been a *complete failure to file*, which

---

[8]Permitting Shaffer to add the proposed averments in support of his existing claims especially makes sense with respect to his hostile work environment claims under Title VII and the ADEA. As the Supreme Court explained in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002), "the incidents comprising a hostile work environment are part of one unlawful employment practice," and an employer "may be liable for all acts that are part of this single claim."

necessarily precludes characterizing such requirements as 'jurisdictional.'")(emphasis added).

In contrast, the administrative exhaustion requirement contained in the FTCA must be viewed somewhat differently because it limits the scope of a governmental waiver of sovereign immunity. *John R. Sand & Gravel Co. v. United States*, 128 S.Ct. 750, 753 (2008). The statute of limitations applicable to FTCA claims provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). In *Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit held that the FTCA's two-year statute of limitations is not jurisdictional, and that failure to comply with the limitations period is an affirmative defense within the meaning of Federal Rule of Civil Procedure 8(c). Nevertheless, it is also firmly established that one's *complete failure* to file an administrative tort claim (as opposed to one's failure to file a *timely* administrative tort claim) deprives a federal court of subject-matter jurisdiction to entertain an action brought under the FTCA based on the particular incident in question.[9] *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995); *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971). In this case, it is undisputed that Shaffer has completely failed to exhaust his administrative remedies with respect to both his discharge and the decision of the Butler VAMC to report his alleged incompetence to the Pennsylvania State Licensing Board. Under these circumstances, the Court would not have subject-matter jurisdiction to entertain Shaffer's newly proposed FTCA claims if leave to amend

---

[9]The jurisdictional nature of the inquiry involving FTCA claims is based, to some extent, on the jurisdiction-granting language contained in 28 U.S.C. § 1346(b)(1), which makes no explicit mention of administrative exhaustion. *Continental Casualty Co. v. United States*, 535 F.3d 132, 140-145 (3d Cir. 2008). In this regard, the United States Court of Appeals for the Third Circuit has made clear that the FTCA's administrative exhaustion requirement is a jurisdictional prerequisite to suit, and that it is not subject to waiver. *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995); *Bialowas v. United States*, 443 F.2d 1047, 1048-1049 (3d Cir. 1971).

were granted.[10]  Accordingly, the Court will deny Shaffer's Motion for Leave to Amend to the extent he seeks to add new claims under the FTCA and to reinstate the United States as a party because it would be futile to permit an amendment adding claims that would have to be immediately dismissed for want of jurisdiction.[11]

## IV.    CONCLUSION

Because the Court would lack jurisdiction to entertain the FTCA claims that Shaffer seeks to add, Shaffer's Motion for Leave to Amend will be denied to the extent it seeks the addition of such claims and the reinstatement of the United States as a party.  The Motion will be granted to the extent it seeks to add the proposed new factual averments in support of the claims

---

[10]In the portions of his proposed amendment concerning the FTCA claims that he wishes to assert, Shaffer incorporates by reference all of his prior averments "excepting only allegations of discrimination based on age or gender." Doc. No. 53-3, ¶¶ 71, 88. To the extent that Shaffer seeks to reassert his prior FTCA claims (even in the absence of the new, unexhausted claims), the Court is unpersuaded by his effort to overcome the preemptive force of Title VII and the ADEA by presenting his allegations in such a manner.  One cannot assert an otherwise preempted FTCA claim simply by disclaiming reliance (with respect to that claim) on the very theories of discrimination that support the argument for preemption in the first place.  "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by [such] artful pleading." *Brown v. General Services Administration*, 425 U.S. 820, 833 (1976).

[11]In *Wilds v. United States Postmaster General*, 989 F.Supp. 178, 186-188 (D.Conn. 1997), the United States District Court for the District of Connecticut determined that the plaintiff's EEOC charge had itself served to fulfil the FTCA's exhaustion requirement. Nevertheless, the District Court made that determination based on its determination that the contents of the EEOC charge had sufficiently described both the underlying incident and the "sum certain" at issue to satisfy the FTCA's jurisdictional prerequisite to suit. *Wilds*, 989 F.Supp. at 187-188. Here, the Court need not determine whether the FTCA's exhaustion requirement can be satisfied by the filing of an EEOC charge. It is undisputed that Shaffer never invoked further administrative remedies under Title VII and the ADEA in connection with the Butler VAMC's decision to discharge him and to report him to the Pennsylvania State Licensing Board for incompetence.  Consequently, Shaffer's initial exhaustion of his administrative remedies under Title VII and the ADEA cannot be deemed to have satisfied the exhaustion requirements of the FTCA with respect to those incidents. *Fairley v. Potter*, Civil Action No. 01-1363, 2003 WL 403361, at *5-7, 2003 U.S. Dist. LEXIS 2320, at *15-19 (N.D.Cal. February 13, 2003).

which already are before the Court.  An appropriate order will follow.[12]


Date: February 9, 2009


                                                      s/ David Stewart Cercone
                                                      David Stewart Cercone
                                                      United States District Judge

cc:     Anthony P. Picadio, Esquire
        Picadio, McCall, Miller & Norton
        600 Grant Street
        4710 USX Tower
        Pittsburgh, PA 15219

        Christy C. Wiegand, AUSA
        U.S. Attorney's Office
        Suite 4000, U.S. Post Office & Courthouse
        700 Grant Street
        Pittsburgh, PA 15219

---

[12]Given the determination on the issue of futility, the Court has no occasion to consider, and expresses no opinion with respect to, whether it would be precluded from entertaining the proposed FTCA claims for any other reason.  Specifically, no opinion is expressed as to whether they would be barred by the FECA, whether they would be barred by the FTCA's statutory exceptions to liability, whether they would be preempted by Title VII and the ADEA in accordance with the rationale contained in the prior opinion, or whether they would be preempted by the Rehabilitation Act of 1973 [29 U.S.C. § 701 *et seq.*], which incorporates the standards contained in the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*] concerning employment-related medical examinations and inquiries.  *Doe v. United States Postal Service*, 317 F.3d 339, 340 (D.C.Cir. 2003)(recognizing the ADA's medical examination confidentiality provision as incorporated within the Rehabilitation Act); *Rezza v. Dept. of Justice*, 698 F.Supp. 586, 588 (E.D.Pa. 1988)(recognizing the Rehabilitation Act as a federal employee's exclusive remedy for discrimination on the basis of handicap or disability).